UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

William R. Klopfenstein, *et al*.,

    Plaintiffs,

v.

Fifth Third Bank,

    Defendant.

Case No. 1:12cv851

Judge Michael R. Barrett

## OPINION & ORDER

This matter is before the Court Plaintiffs' Motion to Certify Class and Appointment of Class Counsel. (Docs. 136, 137).[1] Defendant has filed a Response in Opposition (Doc. 138); and Plaintiffs filed a Reply (Doc. 144). Defendant was then granted leave to file a Sur-reply. (Doc. 148).

Plaintiffs request oral argument. (Doc. 137, PAGEID# 1611). Defendant Fifth Third Bank agrees with Plaintiffs that oral argument is warranted in this case due to the importance of the class certification decision on the resolution of this litigation. (Doc. 138, PAGEID# 1772). However, pursuant to S.D. Ohio R. Civ. 7.1(b)(2), oral argument is not "deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented."

## I. BACKGROUND

Plaintiffs bring claims on behalf of themselves and others similarly situated based on Defendant's "Early Access" cash advance loan program. On appeal, the Sixth Circuit described this program as follows:

---

[1] Plaintiffs have filed their motion in both a redacted and unredacted version.

> a short-term lending option the bank offered to certain customers who held eligible checking accounts with it. Fifth Third, as both lender and bank, had direct access to borrowers' checking accounts. It deposited Early Access loans straight into borrowers' accounts and then paid itself back automatically—plus a 10% "transaction fee"—after a direct deposit posted or thirty-five days elapsed, whichever came first. The contract governing the program disclosed the annual percentage rate ("APR") as 120% in all cases.

*In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 269 (6th Cir. 2019).

In reversing this Court's dismissal of Plaintiffs' breach of contract claim, the Sixth Circuit explained that the contract governing the program provides multiple descriptions of "APR" that are inconsistent with one another. *Id*. at 279. These descriptions included a definition of APR ("APR is a measure of the cost of credit, expressed as a yearly rate"); and a formula for calculating APR ("[t]he Annual Percentage Rate is calculated by dividing the transaction fee by the Advance amount and multiplying the quotient by the number of statement cycles within a year. For example, $ 100 Advance with a $ 10 transaction fee = $ 10/$ 100 = 0.1% X 12 cycles = 120% APR."). *Id*. at 276. After reviewing these descriptions and other contract language, the Sixth Circuit concluded:

> No interpretation of the contract can give effect to one definition that specifies that APR is "expressed as a yearly rate" while also giving effect to a formula that precludes such an expression. Because the term "APR" as it appears in the contract is "reasonably susceptible of more than one interpretation," it is ambiguous as a matter of law. *Santana v. Auto Owners Ins. Co.*, 91 Ohio App.3d 490, 632 N.E.2d 1308, 1313 (1993). And because "the meaning of the ambiguous language is a question of fact," *SPG, Inc. v. First St. Dev., L.L.C.*, 64 N.E.3d 340, 347 (Ohio Ct. App. 2016), it should, "in the first instance, be decided by the district court," *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 153–54 (6th Cir. 1983).

*Id*. at 280. Accordingly, the Sixth Circuit remanded the breach of contract claim to this Court, which now remains pending along with Plaintiffs' claim under the Truth in Lending Act, 15 U.S.C. § 1601, et seq., ("TILA").

Plaintiffs now move pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, for an order certifying the following classes:

> Breach of Contract Class: All persons in the United States who enrolled in Fifth Third's Early Access Loan Program prior to May 1, 2013 and took out at least one Early Access Loan.
>
> TILA Class: All persons in the United States who were enrolled in Fifth Third's Early Access Loan Program from August 3, 2011 through April 30, 2013.

(Doc. 137, PAGEID# 1619-1620). Plaintiffs also seek an order appointing Plaintiffs as representatives of the classes; and appointing Hassan Zavareei of Tycko & Zavareei, Stuart E. Scott of Spangenberg Shibley & Liber LLP, and Jason Whittemore of Wagner McLaughlin, P.A. as counsel for the classes pursuant to Rule 23(g)(1).

## II. ANALYSIS

### A. Legal Standard Governing Class Certification

To be certified, the class must first meet the four "threshold requirements" of Federal Rule of Civil Procedure 23(a):

> (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class).

*Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1089-1090 (6th Cir. 2016) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). In addition to satisfying the requirements of Rule 23(a), the class must fit under one of the three subdivisions of Rule 23(b). *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002).

Plaintiff seek to certify the classes pursuant to Rule 23(b)(3), which permits a class to be certified where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Defendant challenges class certification based on a lack of typicality and adequacy of representation. Defendant also argues that Plaintiffs have not shown that common issues will predominate over individual issues.

### A. **Commonality under Rule 23(a)(2)**

Under Rule 23(a)(2), a plaintiff must show that "there are questions of law or fact common to the class." *Davis v. Cintas Corp.*, 717 F.3d 476, 487 (6th Cir. 2013); Fed. R. Civ. P. 23(a)(2). A question of law or fact is common to the class if it is "capable of classwide resolution—which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). As the Supreme Court has explained:

> What matters to class certification ... is not the raising of common "questions"—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Plaintiffs explain that the common questions include: (1) the meaning of the term "APR" in the contract; (2) whether Defendant breached the contract; (3) whether

4

Defendant provided notice of amendment of the 120% APR term, as required by the Early Access Loan Agreement, to customers who enrolled in the Early Access Loan Program prior to May 2013; (4) whether Defendant violated TILA; and (5) whether Plaintiffs and Class Members are entitled to damages and the proper measure by which to calculate such damages.

Defendant does not necessarily raise an issue with these common questions identified by Plaintiffs, but instead argues that based on these common issues, Plaintiffs cannot satisfy the typicality and adequacy requirements.

### B. Typicality under Rule 23(a)(3)

With regard to the typicality requirement, the Sixth Circuit has explained that:

> Typicality is met if the class members' claims are "fairly encompassed by the named plaintiffs' claims." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc) (quoting [*In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)]). This requirement insures that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members. *Id.*
>
> These two concepts of commonality and typicality "tend to merge" in practice because both of them "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 131 S. Ct. at 2551 n.5.

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 852-853 (6th Cir. 2013), *cert. denied*, 134 S. Ct. 1277 (2014) (considering commonality, typicality, and adequate representation together due to their "intertwined nature").

Defendant argues that Plaintiffs' claims are not typical because five of the remaining seven named Plaintiffs were deposed, and four of them testified that their understanding of the "Early Access" contract was they would be charged $1 or every

5

$10 they borrowed.  Defendant argues that this extrinsic evidence of class members' intent shows that Plaintiffs never intended to enter into an agreement for a 120% interest rate; and a party cannot enforce an agreement that the party never intended to make.

The Court notes that the certification decision "'generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'"  *Wal–Mart Stores, Inc.*, 564 U.S. at 351 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).  However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 466, 133 S.Ct. 1184, 185 L.Ed.2d 308 (2013).  "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Id*.

Here, the Sixth Circuit has already ruled in this case that under Ohio law, the term "APR" as it appears in the contract is ambiguous as a matter of law; and the meaning of the ambiguous language is a question of fact.  *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d at 280.  While the Court will discuss more fully below what proof Plaintiffs will be required to present in support of their breach of contract claim, for purposes of determining whether Rule 23(a)(3) typicality has been met, the Court notes that Plaintiffs make the same claim based on the same form contract.  In this way, the representatives' interests are aligned with the interests of the represented class members.

Therefore, the Court concludes that Plaintiffs have satisfied Rule 23(a)'s commonality and typicality requirement.

### C. Predominance under Rule 23(b)(3)

The Rule 23(b)(3) predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 594, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young v. Nationwide Mutual Insurance Co.*, 693 F.3d 532, 544 (6th Cir. 2012) (quoting *Randleman v. Fid. Nat. Title Ins. Co.*, 646 F.3d 347, 352-53 (6th Cir. 2011)). However, as this Court has explained:

> "Plaintiffs need not prove that every element can be established by classwide proof." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017) (citing *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1124 (6th Cir. 2016), *cert. denied*, ––– U.S. ––––, 138 S.Ct. 80, 199 L.Ed.2d 25 (2017)). But the key is to "identify[ ] the substantive issues that will control the outcome," in other words, courts should "consider how a trial on the merits would be conducted if a class were certified." *Sandusky Wellness Ctr.*, 863 F.3d at 468, (quoting *Gene & Gene*, LLC v. BioPay, LLC, 541 F.3d 318, 326 (5th Cir. 2008)).

*Fenley v. Wood Grp. Mustang, Inc.*, 325 F.R.D. 232, 251 (S.D. Ohio 2018). Further, "the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 544 (6th Cir. 2012) (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007)).

Defendant argues that individual issues will predominate, relying again on the intent of the individual class members. Defendant explains that whether the issue is

7

viewed as a matter of contract formation or as part of the voluntary payment doctrine, predominance is lacking if the class members differ in their understanding of the terms of their loans.

The Court concludes that regardless of whether Plaintiffs understood the contract entitled them to 120% interest rate or if they believed they would be charged a flat fee of $1-for-$10, it does not alter this Court's class certification analysis. As one federal district court has explained, the class members' understanding of a term in a standard form agreement generally has no bearing on Rule 23(b)(3)'s predominance requirement:

> The Court begins with the common sense principle, stated in the Restatement (Second) of Contracts, that standardized agreements should be "interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing." § 211(2). The contracts at issue are contracts of adhesion, involving non-negotiable terms and a vast bargaining/information imbalance between the parties.

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136, 157 (D.S.C. 2018); *see also In re Checking Account Overdraft Litigation*, 275 F.R.D. 666, 677 (S.D.Fla. 2011) (certifying class where "agreements at issue ... are uniform form contracts offered on a take-it-or-leave it basis and were not the product of individual negotiation"). This approach has been followed by numerous federal courts when presented with class claims based on the breach of a form contract. *Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 441 (1st Cir. 2013) (collecting cases) ("Several federal courts have certified classes for contract disputes over form contracts because the form contracts are interpreted uniformly across members of the class, and thus the outcome does not depend on extrinsic evidence that would be different for each putative class member.");

8

*Vedachalam v. Tata Consultancy Servs*., Ltd., No. 06–CV–0963–CW, 2012 WL 1110004, at *9 (N.D. Cal. Apr. 2, 2012) ("in construing the form contract between Defendants and class members, the Court need not delve into the actual knowledge of individual class members"); *Ewert v. eBay, Inc*., No. 07–CV–02198–RMW, C–07–04487 RMW, 2010 WL 4269259, at *7 (N.D. Cal. Oct. 25, 2010) (same).

However, in some instances, resolution of ambiguity in a form contract cannot be made on a class-wide basis without reference to the individual class members' understanding of a term. As this Court has acknowledged:

> Courts have found that when a form contract is ambiguous and the record indicates that the meaning of the contract varied across class members, individual questions will likely predominate. *See Avritt v. Reliastar Life Ins. Co*., 615 F.3d 1023, 1030-31 (8th Cir. 2010); *Axiom Inv. Advisors, LLC v. Deutsche Bank*, No. 15-cv-9945, 2018 WL 4253152, at *8 (S.D.N.Y. Sep. 6, 2018); *Monaco v. Bear Stearns Cos., Inc.*, No. 9-cv-5438, 2012 WL 10006987, at *6-7 (C.D. Cal. Dec. 10, 2012).

*Kopaleishvili v. Uzbek Logistics, Inc.*, No. 1:17-CV-702, 2019 WL 6609212, at *6 (S.D. Ohio Dec. 5, 2019).

In one of these cases cited above, *Avritt v. Reliastar Life Insurance Co*., 615 F.3d 1023 (8th Cir. 2010), the Eighth Circuit declined to certify a breach of contract class where the evidence was "not clear that any members of the putative class, let alone a substantial number of them, originally understood the contract language in the manner that the [plaintiffs] now propose," and the plaintiffs themselves "attached little significance to the phrase at issue." *Id*. at 1030. The court explained that assuming the plaintiffs' interpretation of the contract is plausible, under Washington law, "the existence of two or more reasonable interpretations opens the door for extrinsic evidence about what each party intended when it entered the contract." *Id*. Therefore,

9

the court explained, in addition to extrinsic evidence about intent, the defendant "would be entitled to introduce evidence about how the contract was explained in various sales discussions and whether each purchaser's understanding of the contract was consistent with the [plaintiffs'] theory." *Id*. Therefore, the court concluded liability to the entire class for breach of contract could not be established with common evidence. *Id*.

The Court distinguishes this case from *Avritt*. As one federal court has explained:

> . . . the ambiguity at issue in *Avritt* was the extrinsic evidence itself—*i.e.*, the content of the individualized sales pitches. Thus, the setting in *Avritt* bears no relation to the contractual context at issue here—customers subject to uniform disclosures when opening new checking accounts or when being notified of changes to accounting practices for existing accounts—where the breach of contract claim is grounded in the actual words of the contract ("negative balance" and "advance of funds"), and the ambiguity is created by conflicting intra-contractual terms ("negative balance" versus "negative available balance," etc.).

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136, 158–59 (D.S.C. 2018). This conclusion is in keeping with other federal courts which have concluded that extrinsic evidence is not fatal to the predominance requirement where ambiguity can be resolved through common proof or the contract itself. *Red Barn Motors, Inc. v. NextGear Capital, Inc.*, 915 F.3d 1098, 1101 (7th Cir. 2019) ("In fact, with a form contract such as this one, uniform application and interpretation of the clauses would be expected absent evidence that the form contracts in fact had a meaning that varied from one signatory to another."); *In re Conseco Life Ins. Co. LifeTrend Ins. Sales and Mktg. Litig.*, 270 F.R.D. 521, 530 (N.D. Cal. 2010) ("[A]s long as plaintiffs are willing to attempt to prove their claims based solely on the policy documents, and not on any oral representations ... the [c]ourt does not believe that a significant amount of individualized

10

proof will be required."); *Claridge v. N. Am. Power & Gas, LLC*, No. 15-CV-1261, 2016 WL 7009062, at *6 (S.D.N.Y. Nov. 30, 2016) ("In large measure, plaintiffs' claims will succeed or fail based on a determination of whether the Sales Agreement was deceptive in its description of the 'variable market based rate'—an issue that can be adjudicated through the use of common proof, and not individualized proof."); *but see Krueger v. Northwestern Mut. Life Inso. Co.*, No. 1:10–CV00128, 2011 WL 2938273, at *6 (N.D.Fla. July 21, 2011) (denying class certification in a breach of contract claim because plaintiff did not show that the contracts were formed under uniform conditions). Here, Plaintiffs do not rely on oral representations made to them or any extrinsic materials.[2] Instead, Plaintiffs' breach of contract is solely based upon conflicting terms in a standard form agreement. The individual class members' understanding of a term in the agreement does not preclude class certification.

Next, as a variation on the same argument, Defendant raises the voluntary payment defense. The Sixth Circuit has explained this defense as follows:

> Under Ohio law, money voluntarily paid by one person laboring under a mistake of fact to another person who claims the right to such payment is generally recoverable, but money voluntarily paid as a result of a mistake of law is not. *See State ex rel. Dickman v. Defenbacher*, 151 Ohio St. 391, 86 N.E.2d 5, 7 (1949) (per curiam); *Consol. Mgmt., Inc. v. Handee Marts, Inc.*, 109 Ohio App.3d 185, 671 N.E.2d 1304, 1307 (1996). "Simply stated, 'a person who voluntarily pays another with full knowledge of the facts will not be entitled to restitution.' " *Scott v. Fairbanks Capital Corp.*, 284 F.Supp.2d 880, 894 (S.D.Ohio 2003) (quoting *Randazzo v. Harris Bank Palatine*, 262 F.3d 663, 667 (7th Cir. 2001)).

---

[2] Defendant has identified testimony of the named Plaintiffs in which these individuals testified that they were told by bank representatives that the cost of the Early Access Loan Program was "$10 on $100" or "$1 for every $10." (Doc. 148, PAGEID# 2375-2376). Defendant argues that this testimony would be relevant extrinsic evidence. However, Plaintiffs' claim for breach of contract is not based on the 10% "transaction fee" language in the contract. Instead, Plaintiffs' theory of liability is based on the meaning of the term "APR."

*Arlington Video Prods., Inc. v. Fifth Third Bancorp*, 569 F. App'x 379, 389 (6th Cir. 2014). Defendant explains that many of the named Plaintiffs continued taking out Early Access loans even after they had been charged the allegedly excessive fees; continued to pay the flat fee of 10% after they had allegedly been overcharged on one or more loans, and even after they had filed this lawsuit.

As the Sixth Circuit has recently reiterated: "A class may be certified based on a predominant common issue 'even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020) (quoting 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778, at 123-24 (3d ed. 2005)). Therefore, the voluntary payment defense is not fatal to a finding of predominance under Rule 23(b)(3).

The same principle applies to Defendant's argument that individual issues will predominate because four of the named Plaintiffs have filed for bankruptcy, which creates unique defenses such as standing and judicial estoppel. Therefore, the Court rejects this argument. *Accord Crawford v. Lexington–Fayette Urban County Gov't*, 2008 WL 2885230 at *11 (E.D.Ky. July 22, 2008) (citation omitted) ("lack of standing due to bankruptcy filings would not require individualized proof at trial' because 'the effect of the bankruptcy filings of [the plaintiffs] is a legal question for the court"); *see also Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 612 (S.D. Ohio 2003) ("Even if Brian Bovee lacks standing, the Court does not believe that this destroys typicality. The appropriate course of action would be to exclude him from the plaintiff class.").

Finally, Defendants argue that because Plaintiffs have not offered a class-wide

damages model which fits their theory of liability, Plaintiffs cannot satisfy the predominance requirement under Rule 23(b)(3).

Although "individual damages calculations do not preclude class certification under Rule 23(b)(3), a court must ensure at the class-certification stage that plaintiffs' formula calculates damages based only on their theory of liability." *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020) (citations omitted).

Plaintiffs claim that Defendant breached the contract "by charging [them] APRs in excess of 120% on Early Access Loans." *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d at 276. Plaintiffs explain that their breach of contract damages will be calculated based on the exact amount of interest class members paid over 120% APR for every loan taken by every class member from the inception of the Early Access Loan Program through the present. Plaintiffs explain further that for every loan, the number of days until repayment will determine the amount of interest that should have been charged had Defendant adhered to its promise of a 120% APR calculated on a yearly basis. This amount will then be subtracted from the amount actually paid by each class member. The resulting difference is the damages claimed for breach of contract. Plaintiffs explain that the damages for their TILA claim will be based on a statutory cap of $1,000,000 per violation. The Court finds that at the class certification stage, Plaintiffs' damages calculation formula is based on their theory of liability.

Therefore, the Court concludes that Plaintiffs have satisfied Rule 23(b)(3)'s predominance requirement.

### III. <u>CONCLUSION</u>

Based on the foregoing, Plaintiffs' Motion to Certify Class and Appointment of

Class Counsel (Docs. 136, 137) is **GRANTED**. Accordingly, it is hereby **ORDERED** that:

1. Pursuant to Rule Federal Rules of Civil Procedure 23, the Court certified the following classes:

    <u>Breach of Contract Class:</u> All persons in the United States who enrolled in Fifth Third's Early Access Loan Program prior to May 1, 2013 and took out at least one Early Access Loan.

    <u>TILA Class:</u> All persons in the United States who were enrolled in Fifth Third's Early Access Loan Program from August 3, 2011 through April 30, 2013.

2. The Court appoints Plaintiffs as representatives of the above classes; and

3. The Court appoints Hassan Zavareei of Tycko & Zavareei, Stuart E. Scott of Spangenberg Shibley & Liber LLP, and Jason Whittemore of Wagner McLaughlin, P.A. as counsel for the classes pursuant to Federal Rules of Civil Procedure 23(g)(1).

**IT IS SO ORDERED.**

*/s/ Michael R. Barrett*
JUDGE MICHAEL R. BARRETT