IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| In re: Fifth Third Early Access Cash Advance Litigation | ) CASE NO. 1:12-CV-00851 <br> ) <br> ) HON. MICHAEL R. BARRETT <br> ) <br> ) ORAL ARGUMENT REQUESTED <br> ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NUMBER 9**

The central issue in this litigation is whether Defendant breached the 120% APR term in the Early Access Agreement by charging more than 120% APR. Defendant now seeks to exclude evidence that is directly relevant to the core of this dispute: correspondence in which its management-level employees, including those responsible for developing and implementing the Early Access Program, discuss the calculation of APR. Defendant's motion should be denied because the evidence is highly relevant and is neither unduly prejudicial nor confusing.

**A.  Defendant's Motion is Premised on a Misstatement of the Issues the Jury Will Decide**

Defendant premises its motion on two erroneous contentions. First, Defendant contends that it can argue to the jury that the APR term was just a "regulatory disclosure." ECF No. 220 at PageID# 6477. Defendant argues, from this premise, that internal communications about APR are not relevant. This Court has already found however that it would be improper to "gloss over" the APR term, and that the meaning of the APR term is the central question in this case. *See* ECF No. 209 at PageID# 6050. Thus this Court must reject Defendant's arguments here, which are premised on the proposition that the APR term means nothing at all.

Similarly, Defendant reduces all of its internal discussions about APR to mean that "Fifth Third employees understood that on an annualized basis not every customer's fixed 10% fee would translate to a 120% annualized rate, which is not in dispute." ECF No. 220 at PageID# 6476. This is

1

just another way of seeking to read the 120% APR term out of the contract. Defendant is correct that Plaintiffs do not dispute the existence of a "$1 for $10" term in the Early Access Agreement, but Defendant is incorrect that the "$1 for $10" term cancels out the 120% APR term, or that Defendant's understanding of APR, separate and apart from the $1 for $10 term, cannot be relevant. The jury in this case will be asked to determine the meaning of the APR Term and, as discussed below, the evidence Defendant seeks to exclude is highly relevant to that issue.

**B.      The Correspondence is Probative of Breach and of the Meaning of the APR Term**

***First***, the emails Defendant seeks to exclude are probative of the fact that customers paid more than 120% APR on their Early Access Loans, which is essential to determining that Defendant breached the Early Access Agreement. For example, in the email exchange at FTB00020870-72 (ECF No. 220-1), Fifth Third managers discuss how APR varies based on the length of a loan. Bruce Howard writes that the 120% APR in the agreement is calculated on "a 35 day term, not 14," but also states that "[i]f a customer pays the advance back before 35 days is up the APR would be higher to the customer . . . ." ECF No. 220-1 at PageID# 6486. And Todd Hall writes that, since the loan repayment is automatic when a direct deposit hits the account, the loan term "might only [be] a shorter period of time than even 14 days." ECF No. 220-1 at PageID# 20871. In the exchange at FTB00021470-71, Mr. Howard then writes that "some customers don't get the 35 day term because we call the loan." ECF No. 220-2 at PageID#6490. This evidence is probative of the fact that Early Access customers frequently paid more than 120% APR on their Early Access loans – particularly given the fact that the average term of Early Access loans was just 11 days. ECF No. 175-11 at PageID# 175-11.

***Second***, to the extent that any extrinsic evidence is admissible in determining the meaning of the term "APR" (which Plaintiffs claim is not the case here because the Early Access Agreement is a standardized contract and *contra proferentum* should apply; *see* ECF No. 175 at PageID# 2919-2922),

2

then the trade usage of the term "APR" is relevant to the parties' intent, *see* 1-OJI-CV 501.07 (contract interpretation); *Clinch River Capital Partners, Inc. v. Elsea, Inc.*, No. 2:11-cv-00400, 2012 WL 5334307, at *6 (S.D. Ohio Oct. 26, 2012). The documents Defendant seeks to exclude are clear evidence of trade usage: they are communications between bankers about how APR is calculated. As described above in the emails at issue, Defendant's managers discuss how APR is calculated based on different loan periods and give various examples. *See* ECF No. 220-1 at PageID# 6487 ("If I take a $500 EAX advance today because I need to repair my car. When my Direct Deposit hits my account on Friday is not the whole $550 paid in full . . . . Technically that would make the APR higher […]."); *id.* at PageID# 6488 ("I calculated the APR for a 14 day loan with a 10% fee. It's 260%."). These are clear examples of how the term APR is used in the banking industry, and are therefore highly relevant to the very question the jury will decide: the meaning of the APR term. *See Advance Wire Forming, Inc. v. Stein*, No. 18-cv-723, 2022 WL 1487605, at *10 (N.D. Ohio May 11, 2022) (admitting evidence a to how the parties at issue used an ambiguous term).

**Fourth**, to the extent that extrinsic evidence as to the Parties' intent is admissible to determine the meaning of the APR term (which again, Plaintiffs claim is not the case here), Defendant's argument that Defendant's "knowledge and intent" regarding the APR term are not probative or that there will be an irrelevant "mini-trial about what Fifth Third employees knew and intended about the APR disclosure" is nonsensical. The question is not whether the correspondence demonstrates that Defendant intended to breach the contract (Plaintiffs do not claim that it is), but rather about what Defendant understood about the meaning of the APR term. Such evidence is patently admissible when the meaning of an ambiguous term is at issue; at least in cases that do not involve form contracts. *See Advance Wire Forming*, 2022 WL 1487605 at *10 (denying motion in limine to exclude evidence regarding misrepresentations in breach of contract case because, since operative term was ambiguous, parties' intent was relevant). To the extent any extrinsic evidence of intent is admissible here,

3

Defendant's intent cannot be described as a sideshow; it's the main event. This Court found as much on summary judgment. ECF No. 209 at PageID# 6059 ("there is evidence in the record that Defendant knew that . . . the APR was higher than 120%"). The cases Defendant cites, which deal with intent to breach, are inapposite here. *See* ECF No. 220 at PageID# 6479.

**C.   The Emails Present no Substantial Risk of Unfairly Prejudicing Defendant or Confusing the Jury**

Admission of this evidence presents no meaningful risk of prejudice or confusion, and certainly not a risk that could substantially outweigh the probative value of this correspondence on the very question the jury is to decide.

***First***, Defendant argues that it would be prejudicial to admit these documents because they might hurt Defendant's case: Defendant argues that the jury should not see Fifth Third's internal correspondence because the emails could be "misconstrued" to "suggest Fifth Third employees agreed with Plaintiffs' interpretation of the contract, but that is not a fair or permissible reading of the documents." Defendant here concedes that the evidence it seeks to exclude is relevant to the interpretation of the APR term, but seeks exclusion because it has a different interpretation. This is no grounds for exclusion. *Dayton Veterans Residences Ltd. P'ship v. Dayton Metro. Hous. Auth.*, No. 3:16-CV-466, 2022 WL 1697934, at *3 (S.D. Ohio May 26, 2022) ("Rule 403 is not concerned with the damage to [a party's] case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis." (cleaned up; citations omitted)). What the emails should be construed to mean is up to the jury to decide.

***Second***, Defendant claims unfair prejudice because one of the documents at issue mentions "usury" and another mentions potential "exposure." But in each email exchange, Fifth Third employees attempt to dispel those notions – including, for example, Howard indicating that the Early Access loans are less expensive than payday loans and explaining the 120% calculation (ECF No. 220-1 at PageID# 6488), and Howard indicating that the "exposure" may be related to "disclosure" but

4

not "whether or not we're doing something wrong" (ECF NO. 220-2 at PageID# 6490). Thus, the correspondence itself is balanced and not unfairly prejudicial, particularly in light of its relevance. And, to the extent that Defendant claims any individual phrases are prejudicial, Defendant's request that the Court exclude all "emails where Fifth Third employees discuss the APR disclosure" is vastly overbroad.

**Third**, Defendant argues that admitting these communications may cause the jury to conclude that there is a *mens rea* element to Plaintiffs' breach-of-contract claim. But the jury will clearly be instructed on the elements of the law and, to the extent that such confusion will remain, any confusion on this point (*i.e.* assigning a higher burden of proof to Plaintiffs), would inure to Defendant's benefit, and therefore would not prejudice Defendant.

For all of the foregoing reasons, Defendant's motion should be denied in full.

Dated: April 10, 2023

Respectfully submitted,

*/s/ Hassan A. Zavareei*
Hassan A. Zavareei (pro hac vice)
Anna A. Haac (pro hac vice)
Shana Khader (pro hac vice)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Suite 1010
Washington, D.C. 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
ahaac@tzlegal.com
skhader@tzlegal.com

Stuart E. Scott
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
Telephone: (216) 696-3232
Facsimile (216) 696-3924
sscott@spanglaw.com

Jason K. Whittemore (pro hac vice)

5

**WAGNER MCLAUGHLIN, PA**
601 Bayshore Blvd., Suite 910
Tampa, FL 33606
Telephone: (813)-225-4000
Facsimile: (813) 225-4010
Jason@wagnerlaw.com

*Class Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

On April 10, 2023, a true and correct copy of the foregoing was filed via the Court's Electronic Filing System. Copies will be served upon counsel of record by, and may be obtained, through the Court's CM/ECF Systems.

Respectfully submitted,

*/s/ Hassan A. Zavareei*
Hassan A. Zavareei (pro hac vice)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Suite 1010
Washington, D.C. 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
ahaac@tzlegal.com

***Class Counsel for Plaintiffs***