# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| In re: Fifth Third Early Access Cash Advance Litigation | ) CASE NO. 1:12-CV-00851 <br> ) <br> ) HON. MICHAEL R. BARRETT <br> ) <br> ) <br> ) |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

LEGAL STANDARD .....................................................................................................................2

ARGUMENT ...................................................................................................................................2

    A.    Plaintiffs' Motion for Summary Judgment on Breach of Contract Should Have Been Granted ........................................................................................................2

    B.    Ample Evidence Supports the Jury's Finding That Defendant Breached the Early Access Agreement by Charging More Than 120% APR ....................................4

        1.    The Testimony of Both Sides' Witnesses and the Contractual Language All Support the Jury's Finding .................................................................5

        2.    Neither "Course of Performance" Nor Defendant's Fact Witness's Testimony Renders the Evidence "Legally Insufficient" to Support the Jury's Finding of Breach ....................................................................7

            a.    "Course of Performance" Evidence Does Not Support Defendant's Interpretation, Much Less Render the Evidence in Plaintiffs' Favor "Legally Insufficient" ..............................................7

            b.    The Testimony of a Single Bank Witness Does Not Render the Evidence of Breach "Legally Insufficient" ...........................................10

        3.    The Jury Could Have Properly Relied on *Contra Proferentum* to find Breach of Contract, Further Establishing Legal Sufficiency ...........................12

CONCLUSION ..............................................................................................................................14

# **TABLE OF AUTHORITIES**

**Cases**

*Arriaga v. Fla. Pac. Farms, L.L.C.*,
   305 F.3d 1228 (11th Cir. 2002) ......................................................................................... 3

*Barnes v. City of Cincinnati*,
   401 F.3d 729 (6th Cir. 2005) ............................................................................................. 2

*Gillis v. Respond Power, LLC*,
   677 F. App'x 752 (3d Cir. 2017) ................................................................................... 3, 8

*Howards v. Fifth Third Bank*,
   No. 18-cv-869 (S.D. Ohio Feb. 6, 2023) ........................................................................... 3

*In re Fifth Third Early Access Cash Advance Litig.*,
   925 F.3d 265 (6th Cir. 2019) ..................................................................................... 4, 5, 10

*In re TD Bank, N.A. Debit Card Overdraft Fee Litigation*,
   325 F.R.D. 136 (D.S.C. 2018) ........................................................................................... 8

*Innovation Ventures, LLC v. N2G Distributing, Inc.*,
   763 F.3d 524 (6th Cir. 2014) ........................................................................................... 12

*Kolbe v. BAC Home Loans Servicing, LP*,
   738 F.3d 432 (1st Cir. 2013) ......................................................................................... 3, 7

*Kusens v. Pascal Co.*,
   448 F.3d 349 (6th Cir. 2006) ............................................................................................. 7

*Norfolk Southern RR v. Allied Erecting & Dismantling Co., Inc.*,
   775 F. App'x 178 (6th Cir. 2019) ................................................................................... 11

*Prosser v. XTO Energy, Inc.*,
   No. 2:12-cv-0883, 2013 WL 1829590 (S.D. Ohio Apr. 30, 2013) .................................. 11

*Radvansky v. City of Olmstead Falls*,
   496 F.3d 609 (6th Cir. 2007) ............................................................................................. 2

*Rodman v. Safeway, Inc.*,
   No. 11-CV-03003-JST, 2014 WL 988992 (N.D. Cal. Mar. 10, 2014) .............................. 3

*Westfield Ins. Co. v. Galatis*,
   797 N.E.2d 1256 (Ohio 2003) ........................................................................................... 3

**Rules**

Fed. R. Civ. P. 50 ............................................................................................................... 1, 2

## INTRODUCTION

At trial, the Jury in this matter determined that Defendant breached its Early Access Agreement with Plaintiffs and the Class. As presented to the Jury, the crux of the issue was whether, as Plaintiffs argued, the 120% APR term in the Early Access Agreement constituted a promise of a fixed cost of 120% APR, or whether, as Defendant contended, Fifth Third was free to charge the 10% fee also listed in the contract, regardless of whether that fee exceeded the stated 120% APR. *See* ECF No. 270 (Jury Instructions) at PAGEID #: 8626. Because it was undisputed at trial that Defendant regularly charged its customers far more than 120% APR, the issue before the Jury was one of contract interpretation: primarily, the meaning and import of the 120% APR term.

After hearing evidence presented by both parties over the course of nearly a week and a half, including both sides' fact and expert witnesses, and after reviewing all of the documents in evidence, the Jury found that Defendant, in fact, breached the Early Access Agreement. Yet, Defendant now asks this Court to disregard the Jury's finding, advancing the untenable argument that the evidence at trial "conclusively established" that Defendant did not breach the Early Access Agreement.[1] Not only is Defendant wrong with regard to the evidence presented at trial, judgment as a matter of law could and should have been granted in Plaintiffs' favor prior to trial. *See generally* ECF No. 175 (Pls.' Mot. for Summ. J. on Breach of Contract).

There was ample evidence presented at trial that the 120% APR term stated the cost of Early Access Loans, and that Defendant therefore breached the agreement when it charged more than 120% APR. *Indeed, Defendant's own witnesses repeatedly conceded facts establishing both.* Further, the Jury could properly have applied the doctrine of *contra proferentum* and construed the Agreement against

---

[1] Defendant claims in its motion that it prevailed at trial on the issues of notice and damages. *See* ECF No. 282 at PAGEID #: 9116. This is incorrect; the Jury made no determination as to either issue. ECF No. 272-1 at PAGEID# 8644-45 (Jury Interrogatories); *see* Fed. R. Civ. P. 50(b) (authorizing motion for judgment as a matter of law on "a jury issue not decided by a verdict").

1

Defendant if it could not resolve the apparent conflict between the 120% APR term and the 10% fee term, leading to the same result. Because the evidence at trial amply supports the Jury's finding against Defendant on breach of contract, the Court should deny Defendant's motion in full.

## LEGAL STANDARD

A district court should grant judgment as a matter of law as to an issue only where "there is no legally sufficient evidentiary basis for a reasonable jury to find" in the opposing party's favor. Fed. R. Civ. P. 50(a). In evaluating a motion under Rule 50 the court must "view[] the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences." *Barnes v. City of Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005). Only if the court concludes that "there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party," should the court grant the motion. *Id.* The court may not reweigh the evidence presented at trial. *Radvansky v. City of Olmstead Falls*, 496 F.3d 609, 614 (6th Cir. 2007).

## ARGUMENT

**A.     Plaintiffs' Motion for Summary Judgment on Breach of Contract Should Have Been Granted**

As an initial matter, Plaintiffs continue to maintain that their breach of contract claim could and should have been decided as a matter of law in Plaintiffs' favor prior to trial. As Plaintiffs argued on summary judgment, because the Early Access Agreement was a form contract of adhesion, and because, as the Court ruled at class certification, "Plaintiffs' breach of contract is solely based upon conflicting terms in a standard form agreement," the only evidence relevant to resolving the ambiguity identified by the Sixth Circuit is the contract itself. *See* ECF No. 175 at PAGEID #: 2917-18 (quoting ECF No. 150 at PAGEID #: 2391-92). Specifically, under Ohio law, "where the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party." *Westfield Ins. Co. v. Galatis*,

2

797 N.E.2d 1256, 1262 (Ohio 2003); *see also* ECF No. 175 at PAGEID #: 2919-2922 (providing additional authority and analysis).

For the same reasons, as argued by Plaintiffs in their motions in limine and in their trial brief, the Court should have excluded extrinsic evidence at trial, particularly evidence of Plaintiffs' and bank employees' individual beliefs about the contract terms. *See generally* ECF Nos. 222 & 223 (Pls.' Mots. in Limine); ECF No. 242 (Pls.' Trial Br.) at PAGEID #: 7149-7154. The numerous courts across the country that have considered this issue have held that form contracts must be interpreted uniformly, which means that individual consumer understanding is not relevant, and *contra proferentum* applies. *See, e.g.*, *Howards v. Fifth Third Bank*, No. 18-cv-869 at ECF No. 102 (S.D. Ohio Feb. 6, 2023) (Barrett, J.); *Gillis v. Respond Power, LLC*, 677 F. App'x 752, 756 (3d Cir. 2017); *Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 436–37 (1st Cir. 2013); *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1247-48 (11th Cir. 2002); *Rodman v. Safeway, Inc.*, No. 11-CV-03003-JST, 2014 WL 988992, at *8 (N.D. Cal. Mar. 10, 2014), *aff'd*, 694 F. App'x 612 (9th Cir. 2017); *see also* ECF No. 242 at PAGEID #: 7149-54 (providing further authority and analysis).

Nonetheless, the case proceeded to trial, and the Court allowed the Jury to hear abundant extrinsic evidence, including expert testimony from both sides as to the meaning and use of APR in the banking industry, bank witnesses' testimony as to their understanding of the APR term, and Plaintiffs' testimony as to their understanding of the contractual terms. This evidence admitted at trial and considered by the Jury amply surpasses the minimal "legal sufficiency" required to uphold the Jury's finding that the 120% APR term constituted a promise as to the cost of Early Access loans, and Defendant's motion must therefore be denied. Importantly, as discussed below, the evidence presented by both sides uniformly established how "APR" is understood, interpreted, and calculated in the consumer financial banking industry (including by Defendant's own fact witnesses) – and

3

industry understanding is the only potentially relevant extrinsic evidence as to the APR term's meaning.

**B.     Ample Evidence Supports the Jury's Finding That Defendant Breached the Early Access Agreement by Charging More Than 120% APR**

In light of both the Sixth Circuit's opinion in this case and the evidence presented at trial, Defendant's entire argument for overturning the Jury's verdict is unmoored from reality and defies credulity. Specifically, Defendant argues that Fifth Third understood the 120% APR to be "a regulatory disclosure, based on an assumed 30-day repayment period," and that Fifth Third's unilateral interpretation should control. But the contract language does not support this argument. The APR term is not identified as a disclosure at all, nor is there anything in the contract that would "inform customers that this disclosure is mandatory," as the Sixth Circuit recognized. *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 279 (6th Cir. 2019). The Sixth Circuit also made clear that, even if the APR had been intended as a disclosure, "that does not mean that the word should be assigned any less meaning or importance as a matter of contract interpretation." *Id.*

The Jury thus properly rejected Defendant's regulatory disclosure argument because neither the law nor the evidence supports it. Rather, the plain language of the contract, along with the overwhelming weight of evidence at trial (including testimony from Defendant's own expert and fact witnesses), supports Plaintiffs' interpretation both as to how APR is commonly understood and calculated, as well as that the 120% stated in the contract promised a fixed-cost APR. Defendant nevertheless brazenly asserts that such an interpretation is unreasonable. Setting aside that the Sixth Circuit has already disagreed with that position by reversing the dismissal of Plaintiffs' breach of contract claim, the evidence at trial made clear that Plaintiffs' interpretation is not only eminently reasonable, but the best interpretation of the contract, resulting in the Jury's finding of breach. At the very least, the Jury's finding in this regard is more than sufficiently supported.

1.  **The Testimony of Both Sides' Witnesses and the Contractual Language All Support the Jury's Finding**

It is undisputed that the Early Access Agreement states both (1) that the loans carry a 120% APR and (2) that Defendant would assess a 10% finance charge on Early Access Loans. In light of both of these provisions, the Sixth Circuit explicitly rejected Defendant's argument that Early Access Agreement was unambiguous as a matter of law because it provided for a "flat transaction fee of 10 percent." *In re Fifth Third*, 925 F.3d at 269 (6th Cir. 2019) ("[w]e cannot endorse an interpretation that would read language out of the contract entirely"). The Circuit Court ultimately held that the Early Access Agreement "was ambiguous because it provided two different descriptions of 'APR' that are inconsistent with each other and cannot be reconciled," raising a "question of fact." *Id.*

Against this backdrop, Defendant's argument that the "plain language of the agreement[] makes clear the product cost $1 for $10" and that Plaintiffs' interpretation "contradicts the plain language of the agreement," referring to the 10% finance charge, is nonsensical. *See* ECF No. 282 (Def. Mot.) at PAGEID #: 9117. As the Court noted at class certification, "Plaintiffs' claim for breach of contract is not based on the 10% 'transaction fee' language in the contract. Instead, Plaintiffs' theory of liability is based on the meaning of the term 'APR.'" ECF No. 150 at PAGEID #: 2392, n.2. The question put to the Jury was how the contract should be interpreted in light of the two apparently conflicting terms.

The extrinsic evidence presented at trial easily supports Plaintiffs' position that the 120% APR term in the Early Access Agreement dictated the product's cost. Defendant argues that "not a single fact witness testified they understood the APR language to dictate the cost of credit," which glaringly omits the fact that *both sides'* banking experts opined that APR is used and understood in the banking industry as a cost term, and that a product fee (such as the 10% finance charge) is just one piece of the APR formula. *See* ECF No. 282 at PAGEID #: 9117. Specifically, Plaintiffs' banking expert, Patricia Oliver, testified unequivocally that, as understood in the banking industry, "[t]he APR is the

5

total cost of credit," and the "transaction fee . . . for the cash advance, the 10 percent, would be a component of the cost of credit." ECF No. 253 at PAGEID #: 7354-55 (Oliver Tr. 22:20-23:4). She also testified that the APR as stated in the Early Access Agreement would be understood in the banking industry as a fixed rate: "We don't see any other percentage relating to the APR, so 120 fixed." ECF No. 253 at PAGEID #: 7354 (Oliver Tr. 22:16-23).

Defendant's banking expert also testified that APR is "associated with [a product's] cost" and that customers "pay" APR. ECF No. 262 at PAGEID #: 8189 (Grice Tr. 117:6-19). He further testified that, as to two loans with identical fees or finance charges, the shorter-term loan would have the higher cost – as reflected in the APR – because the cost of credit includes a measure of time. *Id.* at PAGEID #: 8192 (Grice Tr. 120:3-12).[2] Defendant's fact witnesses further supported this testimony, agreeing that the formula Plaintiffs put forth as the proper interpretation of APR was the industry standard formula and that, applying that formula, Defendant charged its customers far in excess of 120% APR. *See, e.g.,* ECF No. 280-1 at PAGEID #: 9062-63, 9074 (Howard Tr. at 68:22-69:21; 111:02-111:08) (testifying that Early Access APRs exceeded 120% and that a 14-day Early Access Loan had a 260% APR); ECF No. 262 at PAGEID #: 8284-85 (Carpenter Tr. at 211:23-212:8) (agreeing that "[a]t an average loan length of 10 days, th[e] APR would be 356 percent"); ECF No. 259 at PAGEID #: 7987; 8008 (Erhardt Tr. 109:18-23; 130:9-17) (testifying that the APR would be higher than 120% on loans shorter than 30 days and ultimately admitting that the contract's formula, which always resulted in 120%, was "not accurate").

The expert testimony as to the meaning of APR in the banking industry (an understanding that Defendant's own fact witnesses apparently shared), coupled with the 120% APR term in the

---

[2] Like Ms. Oliver, Mr. Grice also testified that a finance charge was an "ingredient" of APR. *See* ECF No. 262 at PAGEID #: 8120 (Grice Tr. 48:8-15). Both experts' testimony thus supports Plaintiffs' interpretation that the APR controls. And all of this expert testimony, as well as the Jury's finding, is consistent with federal regulations recognizing that APRs reflect the contractual cost of a loan. *See* ECF No. 189 at PAGEID #: 4399-4400.

6

contract, constitutes more than sufficient evidence to support the Jury's finding that Defendant breached the Early Access Agreement by charging customers more than 120% APR.[3]

### 2. Neither "Course of Performance" Nor Defendant's Fact Witness's Testimony Renders the Evidence "Legally Insufficient" to Support the Jury's Finding of Breach

Defendant offers two additional arguments that it contends compel a finding in its favor: (1) "course of performance" evidence and (2) the testimony of a single defense witness as to his understanding of the APR term. Both arguments rest on faulty legal principles and ignore evidence presented to the Jury.

#### a. *"Course of Performance" Evidence Does Not Support Defendant's Interpretation, Much Less Render the Evidence in Plaintiffs' Favor "Legally Insufficient"*

Defendant argues that the fact that Plaintiffs and Class Members used the Early Access Product several times "supports" the interpretation of the contract that Defendant presented to the Jury. *See* ECF No. 282 at PAGEID #: 9118. But whether some evidence may "support" Defendant's interpretation does not mean that "there can be but one reasonable conclusion as to the proper verdict," which Defendant must establish in order to prevail. *Kusens v. Pascal Co.*, 448 F.3d 349, 360 (6th Cir. 2006). More importantly, though, there was no "course of performance" evidence presented at trial demonstrating that Plaintiffs understood and agreed that Defendant could charge them in excess of 120% APR or that the APR term was a mere regulatory disclosure with no relevance to cost. The argument also fails for several additional reasons, discussed below.

First, Defendant's contention regarding the import of course-of-performance evidence is incorrect as a legal matter: as discussed above, a form contract of adhesion must be construed irrespective of the understanding or actions of individual consumers. *See, e.g., Kolbe*, 738 F.3d at 441

---

[3] Indeed, this evidence overwhelmingly confirmed Plaintiffs' summary judgment position on breach of contract prior to trial.

7

("form contracts are interpreted uniformly across members of the class, and thus the outcome does not depend on extrinsic evidence that would be different for each putative class member"); *Gillis*, 677 F. App'x at 756 ("standard form contracts should be interpreted uniformly as to all similarly situated signatories whenever it is reasonable to do so, rendering individual, transaction-specific interpretations inapposite"); *In re TD Bank, N.A. Debit Card Overdraft Fee Litigation*, 325 F.R.D. 136, 157 (D.S.C. 2018) (when interpreting a "contract[] of adhesion, involving non-negotiable terms and a vast bargaining/information imbalance between the parties, . . . individual customers' 'intent' and 'course of performance' is largely irrelevant to resolving any ambiguity").

Second, as an evidentiary matter, there was no course-of-performance evidence at trial that demonstrates or even supports that Plaintiffs agreed with Defendant that the APR term was a "regulatory disclosure, calculated based on an assumed 30-day repayment period," with no bearing on the product's cost. To the contrary, Plaintiffs uniformly testified that they expected all of the terms of the Early Access Agreement to be enforced. ECF No. 253 at PAGEID #: 7546 (McKinney Tr. 124:4-9); ECF No. 255 at PAGEID #: 7516 (Harrison Tr. 23:20-25); *id.* at PAGEID #: 7567 (L. Laskaris Tr. 74:7-16); *id.* at PAGEID #: 7628 (D. Laskaris Tr. 135:6-17); ECF No. 263 at PAGEID #: 8322-33 (Fyock Tr. 17:21-8). And they also uniformly testified that they had no knowledge that the APRs on their Early Access loans exceeded the contractually stated rate of 120%. See ECF No. 253 at PAGEID #: 7448-49 (McKinney Tr. at 116:23-17:5); ECF No. 255 at PAGEID #: 7523-24 (Harrison Tr. at 30:21-31:4); *id.* at PAGEID #: 7593 (L. Laskaris Tr. at 100:12-15); *id.* at PAGEID #: 7631 (D. Laskaris Tr. at 138:14-18); ECF No. 263 at PAGEID #: 8327-28 (Fyock Tr. 22:21-23:8). Ultimately, the fact that customers took out multiple Early Access Loans does not demonstrate that consumers agreed with Defendant's interpretation that the APR term would have no bearing on the product's cost.

Furthermore, the evidence presented at trial uniformly demonstrated that, not only did Defendant *never* disclose to any consumer that the APR on Early Access Loans exceeded 120%, Defendant continued to misrepresent that the cost of Early Access loans was 120% throughout the course of performance. Whether individuals originated the loans online, by phone, or at an ATM, Defendant represented to customers that it was charging 120% APR, when in fact most loans far exceeded that rate. *See, e.g.*, JX-2000 at p. 4 (ATM screenshots indicating loan would cost 120% APR); JX-2001 at p. 5 (same for online screenshot); JX-2012 at p. 8 (same for call flow); *see also* ECF No. 262 at PAGEID# 8276 (Carpenter Tr. 204:20-25) (admitting contract did not "explicitly state[]" that APR could vary based on the length of the loan). Indeed, Defendant continued to represent, on customers' bank statements, that they had been charged 120% APR even *after* they had paid back their loans, when Defendant knew with certainty the APR that customers had actually paid far exceeded 120%. *See, e.g.*, JX-2013 at p. 162 (account statement for Plaintiff McKinney indicating loan had 120% APR when actual APR was 521%).[4]

Thus, to the extent that it was proper for the Jury to consider Plaintiffs' and Class Members' course of performance in interpreting the ambiguous APR term, the Jury could easily have determined that it could glean nothing as to the meaning of the Early Access Agreement from Plaintiffs' course of performance – since each transaction replicated the ambiguity in the Early Access Agreement itself. The Jury could also have determined that, since Defendant continued to promise a 120% APR each time a customer took an Early Access Loan, Defendant was reinforcing the promise that Early Access Loans cost 120% APR through its own course of performance. Either way, this evidence does not rescue Defendant from the Jury's finding.

---

[4] Further, the Jury could easily have determined that Defendant's continued misrepresentation of the APR on Early Access Loans even *after* they were paid undercut Defendant's primary defense to breach: that the APR was intended as an estimate and a prospective disclosure. This evidence thus further supports the Jury's finding of breach.

9

    b.  *The Testimony of a Single Bank Witness Does Not Render the Evidence of Breach "Legally Insufficient"*

Next, Defendant argues that, since it purportedly attached a specific meaning to the ambiguous APR term, that meaning must carry the day. In advancing this tenuous argument, Defendant relies on (1) a footnote in a treatise (*Farnsworth on Contracts*), stating that when one party attached a meaning to contractual language but the other attached none, the first party's interpretation should control "if the other party had reason to know this"; and (2) the testimony of a single fact witness (Ben Mendelsohn), who Defendant claims testified that the APR term "was a regulatory disclosure, calculated based on an assumed 30-day repayment period."[5] ECF No. 282 at PAGEID #: 9119. Defendant's argument here fails for at least four reasons.

First, the footnote in *Farnsworth* instructs that one party's interpretation of an ambiguous term should control "if the other party had reason to know this." But Defendant did not present any evidence at trial that Plaintiffs *had any reason to know* that Defendant purportedly interpreted the APR term as "as a regulatory disclosure, calculated based on an assumed 30-day repayment period." As the Sixth Circuit aptly noted, nowhere does the Early Access Agreement state that Defendant understood the APR term was a "regulatory disclosure." *In re Fifth Third*, 925 F.3d at 279 ("[t]he contract does not inform customers that this disclosure is mandatory"). Nor does the Early Access Agreement state that the 120% APR is "calculated based on an assumed 30-day repayment period." *See, e.g.,* JX 2006. To the extent that Defendant contends that the formula in the contract informed Plaintiffs of Defendant's interpretation, the Jury could easily have rejected that argument since the evidence at trial overwhelmingly demonstrated that the formula was inscrutable; indeed, Defendant's key witness

---

[5] Defendant claims that Mr. Mendelsohn testified that the APR term "was a regulatory disclosure, calculated based on an assumed 30-day repayment period." The transcript of Mr. Mendelsohn's testimony is not yet available. For the purposes of this motion only, Plaintiffs assume Defendant's characterization of Mr. Mendelsohn's testimony is accurate.

10

admitted that the formula contained a mathematical error and, even without that error, was inaccurate. ECF No. 259 at PAGEID #: 7980, 8008 (Erhardt Tr. 102:9-24; 130:9-17) (characterizing the mathematical error as a "typo" and ultimately agreeing that, even without the "typo," the formula was not accurate). And Defendant provided no other evidence from which Plaintiffs and Class Members would have understood Defendant's own claimed understanding of the APR term. Under such circumstances, the principle in *Farnsworth* does not apply by its own terms.[6]

Second, Mr. Mendelsohn had *no personal knowledge* of Defendant's intent in drafting the Early Access Agreement or the drafter's understanding of the contract's terms; his own understanding therefore cannot reasonably be understood as the understanding or intent of Defendant Fifth Third Bank. *See, e.g., Norfolk Southern RR v. Allied Erecting & Dismantling Co., Inc.*, 775 F. App'x 178, 187 (6th Cir. 2019) (testimony of employee who "was neither a party to nor a negotiator on behalf of a party to" an agreement was "irrelevant to the jury's task" of determining the meaning of the agreement); *Prosser v. XTO Energy, Inc.*, No. 2:12-cv-0883, 2013 WL 1829590, *5 (S.D. Ohio Apr. 30, 2013) (attorney with "no personal knowledge with regard to the intent of the [contracting] parties," and whose opinion was "limited to what he gleaned from his review of . . . underlying documents," was inadmissible). At the time the Early Access program was implemented, and for several years afterward, Mr. Mendelsohn worked at a bank branch. He testified that his interpretation of the contract was based primarily on his individual review of corporate documents while working at a branch – documents that were admitted into evidence. In other words, Mr. Mendelsohn offered an individual and subjective (biased) interpretation of the APR term based on nothing more than the same documents that the Jury was free to consider and evaluate themselves. The Jury could therefore easily have given Mr. Mendelsohn's

---

[6] Furthermore, Defendant cites no controlling authority requiring the application of this principle, nor does Defendant cite any cases, much less any cases demonstrating that the principle is appropriately applied against the non-drafter of a form contract of adhesion. Indeed, the principle seems to run contrary to the principle of *contra proferentum*, discussed in the following section

11

testimony little or no weight. *See, e.g., Innovation Ventures, LLC v. N2G Distributing, Inc.*, 763 F.3d 524, 536 (6th Cir. 2014) (where intent of company was at issue, jury had "the liberty to disregard [corporation's witness's] self-serving testimony based on their evaluation of his credibility").

Finally, the Jury could have concluded that Defendant's purported interpretation was either unreasonable or that Defendant did not in fact hold the interpretation about the APR term that it claimed to hold. In fact, as Defendant's own former executive agreed at trial, customers had no discretion as to when their loans were repaid, and "120 is not accurate for a loan that's 14 days or 11 days or anything less than 31 days." ECF No. 259 at PAGEID #: 8014 (Erhardt Tr. 136:11-16) (testifying that loan and fee would be repaid from next direct deposit and that customer could not request "the full 35 days to repay"); 8007-08 (Erhardt Tr. 129:19-130:17) (testifying that APR was inaccurate). Thus, the Jury could easily have concluded that Defendant could not have reasonably believed that the 120% APR term was a proper regulatory disclosure – and, in fact, it was not; the Court determined on summary judgment that the APR term violated the Truth in Lending Act. ECF No. 209 at PAGEID# 6060.

### 3. The Jury Could Have Properly Relied on *Contra Proferentum* to find Breach of Contract, Further Establishing Legal Sufficiency

As set forth above, the extrinsic evidence amply supports the Jury's conclusion that Defendant breached the Early Access Agreement by charging more than 120% APR. However, even if the Jury had found the extrinsic evidence to be inconclusive, it could properly have applied the doctrine of *contra proferentum* to find breach of contract – further undercutting Defendant's argument of legal insufficiency.

The Jury was instructed that if the plain language of the Early Access Agreement and the extrinsic evidence "fail to clarify the meaning of the contract . . . an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the non-drafting party. This is for you to decide." ECF No. 270 at PAGEID #: 8627-28. Thus, the Jury could have determined, after hearing all the

12

evidence, that the 120% APR term and the $1-for-$10 term were irreconcilable and applied *contra proferentum* in Plaintiffs' favor. Indeed, Defendant's own expert testified that he could offer no opinion on how to reconcile the 120% APR term and the $1-for-$10 term, and could only state that they were "two terms . . . they both have their integrity and they're different." ECF No. 262 at PAGEID #: 8174 (Grice Tr. 102:9-23).

Defendant's final contentions claiming that "*[c]ontra proferentem* is inapplicable" are a last-ditch attempt to avoid an obvious result. First, Defendant continues to insist that the extrinsic evidence "conclusively resolves any ambiguity in the contract in Fifth Third's favor" and that the 120% APR term cannot control because the contract also sets forth a 10% finance charge. Both of these arguments are addressed and dispensed with above. Defendant then proceeds to argue that Plaintiffs' interpretation unreasonably "requires reading an interest rate into an agreement that states 'there is no interest charge associated with an Advance,'" ECF No. 282, at PAGEID# 9120, but the evidence presented at trial plainly undercuts this contention. Both parties' experts agreed at trial that APR is not an "interest rate": Defendant's own banking expert explained that an APR could be calculated based on either a fee (such as the one in the Early Access Agreement) or an interest rate. ECF No. 262, at PAGEID #: (Grice Tr. 52:3-8) (explaining how APR is calculated on Early Access Loans even though there is no interest rate); *id.* at 8184 (Grice Tr. 112:3-18) (explaining that either a fee or interest goes into the APR formula in same way). Plaintiffs' banking expert testified the same. ECF No. 253 at PAGEID #: 7359-60 (Oliver Tr. 2-27:13-2-28:5) (explaining that APR can take into account "a finance charge . . . or it could be an interest charge . . ., but it's basically what am I as a consumer paying the bank").

Thus, even if the Jury determined that the language of the contract and the extrinsic evidence were inconclusive, it could have properly applied *contra proferentum* to reach its finding of breach, providing yet another legally sufficient basis for its determination.

13

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion for judgment as a matter of law in full.

Dated: June 15, 2023							Respectfully submitted,

*/s/ Hassan A. Zavareei*
Hassan A. Zavareei (pro hac vice)
Anna A. Haac (pro hac vice)
Shana H. Khader (pro hac vice)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Suite 1010
Washington, D.C. 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com
ahaac@tzlegal.com
skhader@tzlegal.com

Stuart E. Scott
**SPANGENBERG SHIBLEY & LIBER LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
Telephone: (216) 696-3232
Facsimile: (216) 696-3924
sscott@spanglaw.com

Jason K. Whittemore (pro hac vice)
**WAGNER MCLAUGHLIN, PA**
601 Bayshore Blvd., Suite 910
Tampa, FL 33606
Telephone: (813)-225-4000
Facsimile: (813) 225-4010
Jason@wagnerlaw.com

***Class Counsel for Plaintiffs***

**CERTIFICATE OF SERVICE**

On June 15, 2023, a true and correct copy of the foregoing was filed via the Court's Electronic Filing System. Copies will be served upon counsel of record by, and may be obtained, through the Court's CM/ECF Systems.

Respectfully submitted,

*/s/ Hassan A. Zavareei*
Hassan A. Zavareei (pro hac vice)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Suite 1010
Washington, D.C. 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
hzavareei@tzlegal.com

***Class Counsel for Plaintiffs***