# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

In re: Fifth Third Early Access Cash Advance
Litigation

Case No. 1:12-cv-00851-MRB

Judge Michael R. Barrett

## FIFTH THIRD'S OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS

Enu A. Mainigi (*pro hac vice*)
Craig D. Singer (*pro hac vice*)
Steven Pyser (*pro hac vice*)
Amy McKinlay (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC 20024
Tel. (202) 434-5000
Fax (202) 434-5029
Email:  emainigi@wc.com
            csinger@wc.com
            spyser@wc.com
            amckinlay@wc.com

Karl Fanter (0075686)
Dante A. Marinucci (0089402)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
Tel. (216) 621-0200
Fax (216) 696-0740
Email:  kfanter@bakerlaw.com
            dmarinucci@bakerlaw.com

*Attorneys for Fifth Third Bank*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................ii

BACKGROUND .................................................................................................................... 2

ARGUMENT ......................................................................................................................... 4

I.      Plaintiffs' Counsel's Attorneys' Fees Request Is Patently Unreasonable. ................................... 4

      A.     The Rates Plaintiffs' Counsel Seek Are Excessive and Contrary to Law. ...................... 5

      B.     Plaintiffs' Counsel's Billed Hours Are Not Reasonable.................................................. 10

      C.     The Court Should Apply Significant Cuts to the Adjusted Lodestar to
            Reach a "Reasonable" Award. ............................................................................ 13

            1.     Plaintiffs' Counsel Should Not Recover for Hours Spent on the
                  Breach of Contract Claim. ............................................................................. 14

            2.     Plaintiffs' Counsel's Lack of Success on the Merits Justifies an
                  Additional Across-the-Board Reduction of the Lodestar. .............................. 15

            3.     Other Relevant Factors Also Support a Further Lodestar
                  Adjustment. .................................................................................................. 17

II.     Plaintiffs' Costs Are Too High. ...................................................................................... 18

III.    Distribution Costs Should Be Paid Out of the Penalty. .................................................. 19

IV.   Any Named Plaintiffs' Service Awards Should Come from the $2 Million
      Judgment. ........................................................................................................................ 20

CONCLUSION ...................................................................................................................... 20

## TABLE OF AUTHORITIES

### CASES

*Bagdasaryan v. Bayview Loan Servicing, LLC*, No. CV14 06691 SJO, 2017 WL 6520591 (C.D. Cal. Aug. 25, 2017) ................................................................................................................14

*Bell v. Prefix, Inc.*, 784 F. Supp. 2d 778 (E.D. Mich. 2011) ................................................ 12, 17

*Blanco v. Key Bank USA, N.A.*, No. 1:04CV230, 2008 WL 11381847 (N.D. Ohio June 30, 2008) ..............................................................................................................................8

*Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588 (6th Cir. 2008) ................................9

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907 (S.D. Ohio 2001) ....................................... 6, 20

*Clark v. Shop24 Glob. LLC*, No. 2:12-cv-802, 2016 WL 3639893 (S.D. Ohio July 8, 2016) ...............12

*Cobell v. Norton*, No. 96-1285 (RCL), 2005 WL 8182003 (D.D.C. Nov. 8, 2005) ..................................19

*Cooley v. Aevum Hotels, LLC*, No. 1:21-cv-798, 2022 WL 3042590 (S.D. Ohio Aug. 2, 2022) ...............6

*Derry v. Buffalo & Assocs., PLC*, No. 2:12-CV-303, 2014 WL 4450146 (E.D. Tenn. Sept. 10, 2014) ..............................................................................................................................11

*Doe v. Ohio*, No. 2:91-CV-00464, 2020 WL 728276 (S.D. Ohio Feb. 12, 2020) ......................... 6, 17, 18

*Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442 (6th Cir. 2009) ................................. 13, 14

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ......................................................19

*Estep v. Blackwell*, No. 1:06CV106, 2006 WL 3469569 (S.D. Ohio Nov. 29, 2006) ..............................20

*Fulkerson v. Yaskawa Am., Inc.*, No. 3:13-cv-130, 2015 WL 6408120 (S.D. Ohio Oct. 23, 2015) .. 16, 17

*Fulkerson v. Yaskawa Am., Inc.*, No. 3:13-CV-130, 2016 WL 927229 (S.D. Ohio Mar. 7, 2016) ..........12

*Gonter v. Hunt Valve Co.*, 510 F.3d 610 (6th Cir. 2007) ....................................................7, 9

*Graceland Fruit, Inc. v. KIC Chems., Inc.*, 320 F. App'x 323 (6th Cir. 2008) ..................................... 8, 13, 17

*Green v. Dressman Benzinger Lavelle, PSC*, No. 1:14–cv–00142–SJD, 2015 WL 223764 (S.D. Ohio Jan. 16, 2015) ........................................................................................................19

*Greene v. Gibraltar Mortg. Inv. Corp.*, 529 F. Supp. 186 (D.D.C. 1981) ......................................14

*Hadix v. Johnson*, 322 F.3d 895 (6th Cir. 2003) ..........................................................20

*Hadix v. Johnson*, 65 F.3d 532 (6th Cir. 1995) .................................................. 7, 13, 17

*HealthCare Facility Mgmt. LLC v. Engnan*, Nos. 1:23-cv-246 *et al.*, 2023 WL 5846874 (S.D. Ohio Sept. 11, 2023) ........................................................................................................... 6

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................. 4, 10, 13, 14

*Hernandez v. Grullense*, No. 12–cv–03257–WHO, 2014 WL 1724356 (N.D. Cal. Apr. 30, 2014) .......... 9

*Hines v. DeWitt*, No. 2:13-cv-1058, 2016 WL 2342014 (S.D. Ohio May 4, 2016), *aff'd*, 676 F. App'x 546 (6th Cir. 2017) ......................................................................................... 16

*Hook v. Baker*, No. C2-02-CV-901, 2004 WL 3113717 (S.D. Ohio Sept. 1, 2004) ................................ 19

*Hossfeld v. Lifewatch, Inc.*, No. 13 C 9305, 2021 WL 1422779 (N.D. Ill. Mar. 4, 2021) .......................... 19

*Howe v. City of Akron*, No. 5:06-cv-2779, 2016 WL 916701 (N.D. Ohio Mar. 10, 2016) ..................... 19

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) ........................... 20

*In re Pine*, 705 F.2d 936 (7th Cir. 1983) ....................................................................................... 17

*Jordan v. City of Cleveland*, 464 F.3d 584 (6th Cir. 2006), *aff'd in part*, No. 1:02CV1280, 2005 WL 6088864 (N.D. Ohio Mar. 30, 2005) ........................................................................ 14

*Kritcher v. Prudential Sec., Inc.*, 799 F. App'x 376 (6th Cir. 2020) ...................................................... 16

*Linneman v. Vita-Mix Corp.*, 970 F.3d 621 (6th Cir. 2020) ............................................................. passim

*McCombs v. Meijer*, No. C-1-99-358, 2002 WL 34461862 (S.D. Ohio Aug. 13, 2002) ............................ 4

*McFadden v. City of Columbus*, No. 2:18-CV-544, 2023 WL 3166712 (S.D. Ohio May 1, 2023) .............. 5

*McKelvey v. Sec'y of U.S. Army*, 768 F.3d 491 (6th Cir. 2014) ............................................................... 16

*McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645 (N.D. Ohio 2023) ....................................................... 20

*Meta v. Target Corp.*, Case No. 4:14-cv-00832-DCN, Doc. 179 (N.D. Ohio Aug. 7, 2018) .................... 6

*Miller v. City of Cincinnati*, No. 1:08CV550, 2013 WL 12227311 (S.D. Ohio Aug. 28, 2013) ...... 4, 13, 16

*Moore v. Cycon Enterprises, Inc.*, No. 1:04-CV-800, 2007 WL 2320051 (W.D. Mich. Aug. 10, 2007) ................................................................................................................................. 17

*Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016) ............................... 6, 7, 9

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ............................................................................ 15

*NorCal Tea Party Patriots v. IRS*, No. 1:13-cv-341, 2018 WL 3957364 (S.D. Ohio Aug. 17, 2018) ................................................................................................................................. 20

*Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm'n*, 590 F. App'x 597 (6th Cir. 2014) ........................ 10

*Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797 (6th Cir. 1996) ................................................8, 11

*QFS Transp., LLC v. Murphy*, No. 1:21-cv-00770, 2023 WL 2785589 (S.D. Ohio Jan. 19, 2023)...............................................................................................................................6

*Reece v. Carey*, No. 3:16-CV-00069-GFVT, 2022 WL 701015 (E.D. Ky. Mar. 8, 2022) .......................14

*Richard v. Caliber Home Loans, Inc.*, 832 F. App'x 940 (6th Cir. 2020).................................5, 13

*Sakhawati v. Lynch*, 839 F.3d 476 (6th Cir. 2016) ...........................................................................14

*Schnall v. Amboy Nat'l Bank*, 279 F.3d 205 (3d Cir. 2002) .........................................................14

*Small v. BOKF, N.A.*, No. 13-cv-01125-REB-MJW, 2014 WL 3906257 (D. Colo. Aug. 7, 2014).......................................................................................................................... 8, 9, 11

*Smith v. Fifth Third Bank*, No. 1:18-cv-00464-DRC-SKB, Doc. 130 (S.D. Ohio Aug. 31, 2021)............6

*Spiller v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 647 (S.D. Ohio 2013) ..........................................12

*Stutzka v. McCarville*, 243 F. App'x 195 (8th Cir. 2007) ...........................................................8, 10

*Swapalease, Inc. v. Sublease Exchange.com, Inc.*, No. 1:07-CV-45, 2009 WL 1119591 (S.D. Ohio Apr. 27, 2009)..........................................................................................................7, 11

*Thorn v. Bob Evans Farms, Inc.*, No. 2:12-cv-00768, 2016 WL 8140448 (S.D. Ohio Feb. 26, 2016)..............................................................................................................................19

*Tinch v. City of Dayton*, 199 F. Supp. 2d 758 (S.D. Ohio 2002) .......................................................4

*Tyson v. John R. Serv. Ctr., Inc.*, No. 13-13490, 2019 WL 5162957 (E.D. Mich. Oct. 15, 2019) ............14

*United States ex rel. Lefan v. Gen. Elec. Co.*, 397 F. App'x 144 (6th Cir. 2010)....................................17, 18

*Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir. 1983)...............................................................11

*Venegas v. Mitchell*, 495 U.S. 82 (1990) ...........................................................................................8

*Vogt v. State Farm Life Ins. Co.*, No. 2:16-cv-04170-NKL, 2021 WL 627041 (W.D. Mo. Jan. 4, 2021)................................................................................................................................19

*Wepsic v. Josephson (In re Wepsic)*, 238 B.R. 845 (Bankr. S.D. Cal. 1999)...............................8, 11

*Women's Med. Pro. Corp. v. Baird, M.D.*, No. 2:03 CV 162, 2003 WL 23777732 (S.D. Ohio Dec. 15, 2003)........................................................................................................................12

## STATUTES AND OTHER AUTHORITIES

15 U.S.C. § 1640(a)(3) ...................................................................................................... 1

3 Newberg and Rubenstein on Class Actions § 8:32 (6th ed.) ............................................... 19

Plaintiffs' counsel lost 17 of the 18 claims they asserted on behalf of the class, most importantly the $443 million breach of contract claim that has always been the focus of this case. Yet they seek *more than $5.6 million in fees and $315,000 in costs*—which account for nearly all work in this litigation—for obtaining a $2 million statutory penalty award on a strict-liability TILA claim. By counsel's own admission, that claim is "almost identical to" a claim they litigated against another defendant in 2014. *See* Pls.' Mot. Summ. J., ECF 175, PAGEID#2927.

TILA only permits recovery of "reasonable" attorneys' fees and costs, 15 U.S.C. § 1640(a)(3), and counsel's request is plainly unreasonable. It includes fees for *26 different attorneys* and *22 support staff* from *six law firms*, using hourly billing rates that this Court has previously rejected. Seven attorneys are even asserting rates *of more than $1,000 per hour* back to 2012, when almost no attorneys in the country (much less in the Southern District of Ohio) charged such rates. They also proffer many duplicative, vague, and other improper billing entries.

Even after correcting for those clear errors, the most important factor in determining a fee award is counsel's degree of success. On that metric, any award to Plaintiffs' counsel should be dramatically reduced. Plaintiffs' counsel are attempting to recover nearly the entirety of their fees related to their *unsuccessful* claim for breach of contract, which accounted for the vast majority of their work. This request is especially unwarranted because counsel backed out of a settlement in 2016, which would have netted them far *more* than they ultimately recovered for the class, solely because of their valuation of the breach of contract claim they ultimately lost. In other words, none of the fees and costs after 2016 were incurred because of the TILA claim.

Plaintiffs have cited no case where a court has entered a fee award on a TILA claim—or any claim, for that matter—for any amount close to the $5,638,923 they are seeking here. The Court should take one of two approaches to reach a reasonable fee award. Option 1: allow only reasonable fees through the date of the settlement they later rejected (October 10, 2016); or Option 2: reduce

the amount of reasonable fees by 50% across the board because most of the work was directed at the unsuccessful breach of contract claim.  Those options are shown below:

| | Option 1 | Option 2 |
|---|---|---|
| Plaintiffs' asserted claim | $5,638,923 | $5,638,923 |
| Reduction for applying Rubin Committee rates (Section I.A) | ($2,735,793) | ($2,735,793) |
| Reduction for unreasonable hours (Section I.B) | ($1,148,596) | ($1,148,596) |
| *Subtotal* | *$1,754,534* | *$1,754,534* |
| Reduction for hours claimed after Oct. 10, 2016 (Section I.C) | ($1,444,466) | - |
| Across-the-board reduction of 50% (Section I.C) | - | ($877,267) |
| **TOTAL** | **$310,068** | **$877,267** |

Plaintiffs' claim for costs, including for class certification notice, is similarly unreasonable and justifies at least a 50% reduction.  Finally, the Court should reject counsel's legally unjustifiable request to charge Fifth Third for distribution costs and service fees for the named Plaintiffs.

## BACKGROUND

Although Plaintiffs' counsel emphasizes that this case is more than ten years old, most of their work had nothing to do with the TILA claim.  Plaintiffs initially asserted 18 separate claims. *See* ECF 68 (Oct. 15, 2013).  The Court dismissed all but one, the TILA claim, in 2015.  ECF 89 (Mar. 30, 2015).  Plaintiffs then litigated for several years to overturn dismissal of the breach of contract claim.  In their motion for entry of a final judgment so they could appeal the dismissal, Plaintiffs argued that the breach of contract and TILA claims were "analytically distinct."  ECF 101 (Jan. 10, 2018), PAGEID#1287; *see also* Reply, ECF 105, PAGEID#1312.  The Court agreed and granted the motion, holding that "the differences in the operative facts necessary to give rise to Plaintiffs' contract claims and the TILA claim sufficiently outweigh what they have in common."  Op. & Order, ECF 108, PAGEID#1337 (citation omitted).  In 2019, the Sixth Circuit reinstated the breach of contract claim.  These four years of litigation had nothing to do with the TILA claim.

During this time, the parties also engaged in "extensive Court-mediated settlement discussions and discovery."  Pls.' Rule 54(b) Mot., ECF 101, PAGEID#1285.  But these were not

driven by TILA, either.  To the contrary, Plaintiffs represented to the Court that "*resolution of the contract claim is driving resolution of the entire litigation*."  ECF 105, PAGEID#1316 (emphasis added).  True.  The parties entered a "Memorandum of Understanding to settle the matter on October 10, 2016," but Plaintiffs backed out when they claimed that the contract damages they wanted to pursue were "exponentially higher than the potential TILA damages due to TILA's statutory caps."  ECF 101, PAGEID#1285–86.  In their view, the maximum TILA recovery they could have obtained, $2 million, represented *less than one half of one percent* of the $443 million award they ultimately decided to pursue.  *See* ECF 276, PAGEID#8898.  In other words, by their own admission, Plaintiffs' valuation of the *breach of contract* damages "derailed settlement negotiations" that would have paid the Class more than full value of the TILA claim—more than seven years ago.  Reply, ECF 105, PAGEID#1311.

Following remand from the Sixth Circuit, Plaintiffs obtained class certification for a breach of contract class and a TILA class.  ECF 150.  Plaintiffs explained that the "TILA claim will require the factfinder to resolve one, central issue *without resort to individualized extrinsic evidence*: did Fifth Third accurately disclose that the actual APR associated with its Early Access Loans would likely be higher than 120%?"  ECF 137, PAGEID##1630–31 (emphasis added).  Again, true.  None of the extrinsic evidence on which the bulk of this litigation was spent was relevant to TILA.

Following certification, merits discovery began.  Plaintiffs took one deposition, of Fifth Third's 30(b)(6) witness, Ben Mendelsohn, prior to the close of fact discovery in December 2021. *See* ECF 157.  In early 2022, the parties filed a joint motion to modify the scheduling order to allow additional depositions and to extend the expert discovery and summary judgment deadlines.  ECF 163, 167.  The Court entered the proposed order, ECF 168, but rather than wait for the additional fact depositions and expert discovery, Plaintiffs on April 26, 2022 filed an early motion for summary judgment on the TILA claim "in its entirety."  ECF 175, PAGEID#2901.  They relied on the

3

contract and bank statements (which contained the at-issue TILA disclosures), statutory and case law, a declaration from their class certification motion, and Fifth Third's admissions that the average repayment period for an advance was 11 days. *Id.* at PAGEID##2926–29. All but one of the extra depositions Plaintiffs had requested, and all of the merits expert discovery, took place ***after*** Plaintiffs filed their motion.[1] As they explained, "The law is clear that when, as here, the sole question is whether a contract term violates TILA, the Court, not the trier of fact, resolves that issue from the face of the contract itself." Reply ISO Summ. J., ECF 191, PAGEID#4798. In other words, Plaintiffs argued that the merits discovery for which they now seek TILA fees was irrelevant to their TILA claim, and no triable issue of fact remained. The Court agreed, entering summary judgment on the TILA claim on March 29, 2023. ECF 209.

## ARGUMENT

### I. Plaintiffs' Counsel's Attorneys' Fees Request Is Patently Unreasonable.

The party seeking attorneys' fees under a fee-shifting statute bears the burden to establish that the number of hours and the rates claimed are "reasonable." *Tinch v. City of Dayton*, 199 F. Supp. 2d 758, 761–62 (S.D. Ohio 2002). The Court should calculate "the number of hours ***reasonably*** expended on the litigation multiplied by a ***reasonable*** hourly rate" to reach the lodestar calculation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (emphases added). "After the initial lodestar calculation, the district court has discretion to adjust the award based on relevant considerations 'peculiar to the subject litigation.'" *Miller v. City of Cincinnati*, No. 1:08CV550, 2013 WL 12227311, at *8 (S.D. Ohio Aug. 28, 2013) (Barrett, J.) (citation omitted). "Plaintiff[s'] counsel should not recover a fee award which dwarfs the result obtained in the case, no matter how significant the effort." *McCombs v. Meijer*, No. C-1-99-358, 2002 WL 34461862, at *4 (S.D. Ohio

---

[1] Tom Kappes was deposed on April 22, 2022. Mark Erhardt and Tom Carpenter were deposed on April 28, and Bruce Howard was deposed on May 13. Expert reports were exchanged in May/June, followed by depositions in July/August.

Aug. 13, 2002). The "most critical factor" a court should consider is "the degree of success obtained." *Richard v. Caliber Home Loans, Inc.*, 832 F. App'x 940, 946 (6th Cir. 2020) (quoting *Hensley*, 461 U.S. at 436); *see also Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 634 (6th Cir. 2020) (holding that after lodestar, the Sixth Circuit "has continued to look at the success obtained to determine the reasonableness of fees awards"). "If a party asks for an unreasonable fee award, a district court, in its discretion, may grant the party only the portion of the request that is reasonable." *McFadden v. City of Columbus*, No. 2:18-CV-544, 2023 WL 3166712, at *1 (S.D. Ohio May 1, 2023).

Plaintiffs' counsel's fee request for more than $5.6 million is plainly unreasonable. They obviously incurred those fees in the hope of obtaining $443 million for breach of contract. But they lost not just that claim, but 17 of the 18 claims they originally asserted. The only claim they won was always capped by statute at $2 million. In other words, they won *less than one half of one percent* of what they sought. To obtain that result, *six different law firms* billed *6,624 hours* at rates that by any measure are wildly out of proportion with what is appropriate for the Southern District of Ohio. To reach anything resembling a "reasonable" fee award in this case, the Court must therefore apply significant cuts to Plaintiffs' counsel's claimed rates and hours, as well as an additional across-the-board reduction due to this lack of success on the merits and other relevant factors. We explain.

### A. The Rates Plaintiffs' Counsel Seek Are Excessive and Contrary to Law.

Plaintiffs' counsel's lodestar improperly uses today's "Laffey Matrix"—a rate table from the District of Columbia—for all of their rates dating back to 2012. **Seven** of their attorneys claim rates **in excess of $1,000 per hour**, another **nine** of them claim between $850 and $1,000.[2] This approach is unreasonable and contrary to law.

"To determine a reasonable hourly rate, courts use as a guideline the prevailing market rate,

---

[2] ECF 303-3, PAGEID#10411; ECF 303-06, PAGEID#10479; ECF 303-9, PAGEID#10534; ECF 303-13, PAGEID#10718; ECF 303-14, PAGEID#10770; ECF 303-15, PAGEID#10801.

which is 'defined as the rate that lawyers of comparable skill and experience can reasonably expect to command *within the venue of the court of record*.'" *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 715 (6th Cir. 2016) (emphasis added) (citations omitted).  In this district—even in nationwide class actions—courts use the Rubin Committee rates, which are "a list of pre-calculated billing rates tiered by years of experience." *QFS Transp., LLC v. Murphy*, No. 1:21-cv-00770, 2023 WL 2785589, at *2 (S.D. Ohio Jan. 19, 2023) (Barrett, J.) (citation omitted); *see also Linneman*, 970 F.3d at 629–31 (holding district court abused its discretion in class action by not using the "community market rule to calculate a reasonable billing rate," which "in the Southern District of Ohio . . . [is] the Rubin rates" (citation omitted)); *HealthCare Facility Mgmt. LLC v. Engnan*, Nos. 1:23-cv-246 *et al.*, 2023 WL 5846874, at *4 n.22 (S.D. Ohio Sept. 11, 2023) (Barrett, J.) (string-citing cases in this district using this approach); *Cooley v. Aevum Hotels, LLC*, No. 1:21-cv-798, 2022 WL 3042590, at *6 & n.15 (S.D. Ohio Aug. 2, 2022) (Barrett, J.) (rejecting the Adjusted Laffey Matrix approach urged by Plaintiffs' counsel here).[3]  These Rubin rates are also consistent with the Ohio rates in the Real Rate Report, published annually by CEB/Gartner and Wolters Kluwer, which provides objective data for hundreds of legal markets, including Cincinnati, Columbus, and Dayton.  *See* Ex. 1 (Decl. of Grant Stiefel ("Stiefel Decl.")) ¶ 45.  While the Sixth Circuit has "occasionally approved the application of current billing rates," it does not "prefer[ ] . . . application of current rates," and a district court should use historical rates for the years the legal work was performed if "current rates

---

[3] The cases Plaintiffs cite to the contrary are either from other jurisdictions, or approvals of settlements, which the Sixth Circuit analyzes under a different standard, *see Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 910–11 (S.D. Ohio 2001), and do not even mention the word "Laffey."  *See Smith v. Fifth Third Bank*, No. 1:18-cv-00464-DRC-SKB, Doc. 130 (S.D. Ohio Aug. 31, 2021); *Doe v. Ohio*, No. 2:91-CV-00464, 2020 WL 728276 (S.D. Ohio Feb. 12, 2020), *report and recommendation adopted*, No. 2:91-CV-464, 2020 WL 996561 (S.D. Ohio Mar. 2, 2020); *see also Meta v. Target Corp.*, Case No. 4:14-cv-00832-DCN, Doc. 179 (N.D. Ohio Aug. 7, 2018).  Plaintiffs also misrepresent *Doe*.  The court in that case in no way suggested that non-profit counsel should be treated differently than for-profit counsel; to the contrary, the Court explained that the "same rule applies" for both, as "Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization."  2020 WL 728276, at *10 n.6 (alteration omitted) (quoting *Blum v. Stenson*, 465 U.S. 886, 894 (1984)).  The Court approved higher rates for the out-of-town counsel, still significantly below what Plaintiffs' counsel here seek, because of their "decades of experience in disability rights" and extraordinary result for their clients.  *Id.* at *11.

would produce a windfall." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 617–18 (6th Cir. 2007).

In certain extraordinary circumstances, courts in this district have allowed out-of-town attorneys to recover higher rates. *See, e.g., Swapalease, Inc. v. Sublease Exchange.com, Inc.*, No. 1:07-CV-45, 2009 WL 1119591, at *5 (S.D. Ohio Apr. 27, 2009) (permitting out-of-town rates for "highly-specialized" patent attorneys). Where a fee applicant seeks to recover fees for an out-of-town specialist, the district court must determine "(1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995). "[T]he mere fact that a particular attorney 'has a national reputation for expertise in the relevant kind of litigation does not constitute proof that the attorney's expertise was necessary' to the litigation"; [i]f competent counsel was readily available locally at a lower charge or rate, the district court may apply local market rates to the services provided by the out-of-town specialist." *Husted*, 831 F.3d at 716, 719 (alterations and citation omitted) (holding district court abused discretion by awarding election law "specialists" out-of-town rates).

Plaintiffs' counsel's rates are excessive for multiple reasons. First, they have not met their burden to justify departing from Rubin Committee rates in favor of their significantly higher out-of-town Laffey rates. *See* Ex. 1, at ¶ 41; *Linneman*, 970 F.3d at 630. Consumer class action experience alone does not suffice. *Id.* at 630–31 (reversing a fee award that "split the difference between the Rubin rates and the requested rates to reflect the national practice and experience of class counsel" in consumer class action (cleaned up)). Six of the attorneys claiming fees here—including the attorney who, in his own words, "conducted voir dire, delivered the opening statement, and cross examined [Fifth Third's] key witness"—work at an Ohio-based firm with an active consumer class action practice. *See* ECF Nos. 303-5, 303-6. "[I]t's called the 'community market rule' for a reason: the relevant inquiry is what billing rates are required 'to encourage competent lawyers ***within the***

*relevant community* to undertake legal representation.'" *Linneman*, 970 F.3d at 630 (citation omitted). Such lawyers were plainly available in Ohio, and thus the rates that class counsel may have previously charged at "some of the most prominent law firms in the country . . . tell us little—if anything—about the appropriate billing rates for a case litigated by three law firms in the Southern District of Ohio." *Linneman*, 970 F.3d at 631.[4]

Nor was the TILA claim "novel[]" or "difficult[]." *See Graceland Fruit, Inc. v. KIC Chems., Inc.*, 320 F. App'x 323, 329 (6th Cir. 2008) (citation omitted). TILA is a strict-liability statute whose "pivotal inquir[y] revolve[s] around standard form documents," making individualized inquiries into reliance, causation and damages unnecessary. *Blanco v. Key Bank USA, N.A.*, No. 1:04CV230, 2008 WL 11381847, at *14 (N.D. Ohio June 30, 2008). Courts routinely reduce fee requests in TILA cases due to their "relative lack of complexity." *Stutzka v. McCarville*, 243 F. App'x 195, 197 (8th Cir. 2007) (per curiam) (affirming reduction in TILA fee award to *$3,000*, "[t]he district court properly took into account the limited nature of the relief obtained on the TILA claims and the relative lack of complexity of those claims"); *see also Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 800 (6th Cir. 1996) (holding "straightforward TILA case . . . did not require the expertise of more than one lawyer"); *Wepsic v. Josephson (In re Wepsic)*, 238 B.R. 845, 848 (Bankr. S.D. Cal. 1999) (concluding that "relatively straightforward TILA case" did not require two attorneys to litigate).

Furthermore, as this Court has held, another district court found a TILA violation on nearly identical facts in 2014—in a case also brought by Plaintiffs' counsel—on which they have relied throughout this litigation.[5] *See Small v. BOKF, N.A.*, No. 13-cv-01125-REB-MJW, 2014 WL

---

[4] The rates Fifth Third paid to Williams & Connolly LLP and Baker & Hostetler LLP are similarly irrelevant, even under the counterfactual scenario that their rates exceeded those Plaintiffs' counsel seek all the way back to 2012. "What a plaintiff may be bound to pay and what an attorney is free to collect under a fee agreement are not necessarily measured by the 'reasonable attorney's fee' that a defendant must pay pursuant to a court order." *Venegas v. Mitchell*, 495 U.S. 82, 90 (1990).

[5] *See also* Pls. Notice Suppl. Auth., ECF 86, PAGEID##1131–32 (identifying recently-decided *Small* as "direct support" for their opposition to Fifth Third's motion to dismiss); Mot. Certify Class, ECF 137, PAGEID#1621 (describing *Small*

8

3906257 (D. Colo. Aug. 7, 2014); Op. & Order, ECF 209, PAGEID#6059 (calling *Small* "indistinguishable").

Second, while all of Plaintiffs' counsel must use the rates "within the venue of the court of record," *Husted*, 831 F.3d at 715 (citations omitted), it is particularly egregious for the attorneys based *in Ohio* not to do so; the Sixth Circuit has made clear that "[l]ocal lawyers litigating a case in a local courthouse should receive local billing rates." *Linneman*, 970 F.3d at 630–31.

Third, Plaintiffs' counsel seek these exorbitant rates all the way back to 2012, when even the Laffey rates—much less the Rubin rates—were far lower. *See* Ex. 1, at n.3 & Ex. P. Not only should counsel be paid prevailing rates at the time they did the work, the delay in this case reaching a resolution had nothing to do with the TILA claim, but rather was a product of their decision to walk away from a settlement on the breach of contract claim and to appeal that claim's dismissal. Thus, "current rates would produce a windfall." *See Gonter*, 510 F.3d at 617–18 (citation omitted).

Fourth, Plaintiffs' counsel's staffing was extremely top-heavy, with partners performing approximately *80 percent* of the billed work, much of which would typically be performed by associates or even non-attorneys, equating to an average hourly rate of *$848 an hour*. Ex. 1, ¶ 59. Partners should not recover their full rates for this atypical distribution of work. *See Hernandez v. Grullense*, No. 12–cv–03257–WHO, 2014 WL 1724356, at *11 (N.D. Cal. Apr. 30, 2014) ("The trade-off for the higher billing rate that greater experience and specialized knowledge justifies is that more senior attorneys are expected to delegate routine tasks to others with lower billing rates."); *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 596 (6th Cir. 2008) (affirming 25% lodestar reduction "to account for top-heavy billing by partners").

In sum, Plaintiffs' counsel's asserted rates are indefensible. The Court should apply the

---

as "involv[ing] an almost identical factual predicate"); Pls. Mot. Summ. J., ECF 175, PAGEID##2912, 2927 (TILA claim is "on all fours" with, and "almost identical to," *Small*).

historical Rubin Committee rates as set forth in Mr. Stiefel's declaration in accordance with the law in this district. Adjusting the rate yields a lodestar calculation of $2,903,130 (a $2,735,793 reduction) if all billed hours were reasonable. *See* Ex. 1, at ¶ 52. They are not, as we proceed to show.

**B.    Plaintiffs' Counsel's Billed Hours Are Not Reasonable.**

The second element of counsel's lodestar calculation, the "hours reasonably expended on the litigation," is as unreasonable as their rates. *See Hensley*, 461 U.S. at 433–34. Counsel claim *6,624 hours* of work for this simple TILA claim. Attorneys must "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434.

Plaintiffs' counsel's bills are replete with improper entries warranting a substantial reduction:

- <u>Fees for excessive lawyering and duplication of effort</u>: The Sixth Circuit "has repeatedly upheld reductions in attorneys' fees for duplicative or excessive billing." *Ohio Right to Life Soc'y, Inc. v. Ohio Elections Comm'n*, 590 F. App'x 597, 603 (6th Cir. 2014). Specific to TILA, courts routinely reduce fee requests for over-lawyering due to a TILA claim's "relative lack of complexity." *See Stutzka*, 243 F. App'x at 197. As explained, this was a straightforward TILA claim, nearly identical to a claim counsel had made before. This copy-and-paste TILA claim did not require *26 attorneys from six different law firms*.[6] For example, *four* attorneys—*three of them partners*—attended two of the depositions; at least *three* attorneys attended eight others.[7] In contrast, Fifth Third never had more than two billing attorneys at any deposition. Cutting the third and fourth attorneys at each deposition would amount to 61.9 hours, or $$33,458. Ex. 1, at ¶ 99.

---

[6] ECF 303-3, PAGEID#10411 (Tycko & Zavareei, 6 attorneys, 1 "fellow," 17 support staff); ECF 303-06, PAGEID#10479 (Spangenberg Shibley & Liber, 6 attorneys, 2 "Law Clerks," and 1 support staff); ECF 303-9, PAGEID#10534 (Wagner, McLaughlin & Whittemore, 4 attorneys, 1 support staff); ECF 303-13, PAGEID#10718 (Barnow & Associates, 6 attorneys); ECF 303-14, PAGEID#10770 (Consumer Protection Legal, LLC, 2 attorneys); ECF 303-15, PAGEID#10801 (Jones Ward PLC, 2 attorneys).

[7] *See* Ex. 1, at ¶ 97; ECF 303-3, PAGEID##10421, 10425, 10427–28, 10436–37, 10443–44; ECF 303-6, PAGEID##10490–91, 10500, 10505, 10507; ECF 303-10, PAGEID##10579, 10582, 10616–17, 10622–23; ECF 303-13, PAGEID#10749.

- **Excessive internal conference time**: Not only did multiple lawyers from multiple Plaintiffs' firms bill for the same work, they billed for *more than 2,179 hours*—or *$1,876,896*, comprising *a third of the total fees—of internal conferencing time*. Ex. 1, at ¶ 69. This is improper. *See Purtle*, 91 F.3d at 800 (affirming district court's TILA fee award discounting duplicative attorney time or time spent conferring); *In re Wepsic*, 238 B.R. at 848 (removing time "attorneys spent conferring with each other, or reviewing each other's work" on "straightforward TILA case"). At least a 75% reduction for this internal conferencing is appropriate. *See* Ex. 1, at ¶ 69.

- **Excessive research time**: Plaintiffs' counsel billed *839 hours* for legal research, Ex. 1, at ¶ 90, a stunning figure for a straightforward TILA claim virtually identical to their *Small* case. *See supra* pp. 8–9. Though counsel assert this case was filed first, in fact, *more than 75%* of their research time—631 hours—actually postdated the *Small* complaint filed in April 2013. Ex. 1, at ¶ 90. Counsel had an obligation to "not 'reinvent the wheel,'" but instead "take advantage of previous work product." *Derry v. Buffalo & Assocs., PLC*, No. 2:12-CV-303, 2014 WL 4450146, at *4 (E.D. Tenn. Sept. 10, 2014). Astonishingly, *74 percent* (623 hours) of this legal research time was billed by partners claiming hourly rates of $878 to $1,057. Ex. 1, at ¶ 90. A lawyer "cannot demand a high hourly rate—which is based on his or her experience, reputation, and a presumed familiarity with the applicable law—and then run up an inordinate amount of time researching that same law." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983). At least a 75% discount for excessive research time is appropriate. Ex. 1, at ¶ 85.

- **Cryptic, vague and redacted entries**: "Courts unquestionably have authority to downwardly adjust fee claims because of . . . vague entries." *Swapalease*, 2009 WL 1119591, at *2, *5. Plaintiffs' counsel claim *578 hours* for cryptic, vague, or redacted descriptions of work that make it impossible to "assess their reasonableness," such as "Discovery," "document review – 4.5 hours," or "Status with B.B. and R.P." *See* Ex. 1, at ¶¶ 72, 76. This is improper, as they are required to provide

11

"sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Women's Med. Pro. Corp. v. Baird, M.D.*, No. 2:03 CV 162, 2003 WL 23777732, at *4 (S.D. Ohio Dec. 15, 2003) (citation omitted). These entries should be cut entirely from counsel's claim.

- Block-billed fees: While block billing is not per se prohibited, "where the Court is unable to determine whether the hours claimed were reasonably expended" as a result of block billing, "the Court may make an across-the-board reduction." *Fulkerson v. Yaskawa Am., Inc.*, No. 3:13-CV-130, 2016 WL 927229, at *4 (S.D. Ohio Mar. 7, 2016). Here, Plaintiffs' counsel block billed *1,740 hours*, equating to $1,534,426. Ex. 1, at ¶ 96. A 20% discount for this block-billing is appropriate. *See id.*

- Clerical fees: Plaintiffs' counsel seek *358 hours* for clerical work. Ex. 1, at ¶ 84. "[A] purely clerical activity is not billable . . . at all, because such tasks are included in office overhead." *Clark v. Shop24 Glob. LLC*, No. 2:12-cv-802, 2016 WL 3639893, at *4 (S.D. Ohio July 8, 2016) (citation omitted); *see also Spiller v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 647, 651 (S.D. Ohio 2013) (downloading, printing, and mailing documents "are non-billable clerical tasks"). These hours should be cut entirely.

- Trial preparation fees: Plaintiffs' counsel billed over *100 hours* related to "trial preparation" well in advance of trial. Ex. 1, at ¶ 80. Not only is "trial preparation" too vague at that time, *see Bell v. Prefix, Inc.*, 784 F. Supp. 2d 778, 787 (E.D. Mich. 2011), it is improper to bill for trial preparation for a claim that was resolved on March 29, 2023, weeks before trial started on April 17, 2023, as these fees were not incurred during or immediately before trial, at a time when such entries may be appropriate. These hours should be cut entirely. Ex. 1, at ¶ 80. After making these necessary adjustments, the total drops to *3,821 hours*,[8] which equates to a fee of *$1,754,534* applying the

---

[8] Where two or more discounts are applicable to a billing entry (*e.g.*, an entry is both vague and block-billed), we have only applied the highest individual discount, so there is no double-counting.

Rubin Committee rates (or another $1,148,596 reduction)—still an extremely high number for this straightforward TILA claim. *See* Ex. 1, at ¶ 104. The primary reason is that Plaintiffs' counsel is also charging for the vast majority of the fees they spent pursuing the breach of contract claim, for which an additional deduction is proper, as we proceed to show.

### C. The Court Should Apply Significant Cuts to the Adjusted Lodestar to Reach a "Reasonable" Award.

After making appropriate cuts to the rates and hours to reach the lodestar, "the district court has discretion to adjust the award based on relevant considerations 'peculiar to the subject litigation.'" *Miller*, 2013 WL 12227311, at *8 (citation omitted). The Sixth Circuit encourages across-the-board reductions to "avoid[] producing a windfall for lawyers." *Richard*, 832 F. App'x at 943, 949 (citation omitted) (affirming reduction of rates in TILA case by 20%, plus additional across-the-board reduction of 80% due to billing deficiencies and limited success).

Of critical importance here, when a plaintiff prevails on one claim but loses an "unrelated" claim, "no fee may be awarded for services on the unsuccessful claim." *Hensley*, 461 U.S. at 435. "[U]nrelated" claims are "based on different facts and legal theories." *Id.* at 434. But even if a plaintiff's "unsuccessful claims were related to her successful ones, the award of attorney's fees must still be proportional to her recovery." *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 449 (6th Cir. 2009). A court should also consider the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Graceland Fruit*, 320 F. App'x at 329 (citation omitted). Frequently called the "*Johnson* factors," *id.*, they cut strongly against the fee requested and warrant an additional cut to the adjusted lodestar.

### 1. Plaintiffs' Counsel Should Not Recover for Hours Spent on the Breach of Contract Claim.

Plaintiffs' counsel argue that the Court should not apportion fees between the breach of contract and TILA claim, except for 15% of their total time that allegedly was spent "solely" on the breach claim, because "much of the work required for one claim benefited the other and vice versa." ECF 303, PAGEID#10360.  That argument fails.  First, although in some instances a plaintiff who has only partially prevailed may recover fees for hours reasonably expended on "interrelated" claims, the plaintiff cannot obtain "an excessive amount," "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley*, 461 U.S. at 435–36.  A recovery of less than one half of one percent of what Plaintiffs' counsel sought is not "proportional to [their] recovery," *see Dowling*, 320 F. App'x at 449, and does not entitle them to an unprecedented $5.6 million fee award.  The cases Plaintiffs' counsel cite awarded much lower fees.[9]

Second, Plaintiffs' counsel overstate the overlap between the breach of contract and TILA claims.  TILA is a strict-liability statute based on a contract or bank statement, *see Schnall v. Amboy Nat'l Bank*, 279 F.3d 205, 218 n.8 (3d Cir. 2002), so any party's intent was irrelevant.  Thus, the vast bulk of discovery had nothing to do with the TILA claim.  Plaintiffs point to Fifth Third's "good-faith" affirmative defense, but they decline to mention that Fifth Third withdrew that defense in an interrogatory response on September 22, 2021, well before any depositions of Fifth Third witnesses.  Plaintiffs recognized the irrelevance of any discovery to their TILA claim when they filed their summary judgment motion on that claim without waiting for discovery to finish.  *See supra* pp. 3–4.

---

[9] *Sakhawati v. Lynch*, 839 F.3d 476, 480–81 (6th Cir. 2016) ($14,356.25 in fees for successfully winning non-monetary asylum matter); *Jordan v. City of Cleveland*, 464 F.3d 584, 606 (6th Cir. 2006) (litigant sought $155,948 in fees for $175,000 recovery), *aff'd in part*, No. 1:02CV1280, 2005 WL 6088864, at *1 (N.D. Ohio Mar. 30, 2005)); *Reece v. Carey*, No. 3:16-CV-00069-GFVT, 2022 WL 701015, at *4 (E.D. Ky. Mar. 8, 2022) (awarding $254,221 in fees on recovery exceeding $2,000,000); *Tyson v. John R. Serv. Ctr., Inc.*, No. 13-13490, 2019 WL 5162957, at *4 (E.D. Mich. Oct. 15, 2019) ($138,206 in fees); *Bagdasaryan v. Bayview Loan Servicing, LLC*, No. CV14 06691 SJO (VBKx), 2017 WL 6520591, at *6 (C.D. Cal. Aug. 25, 2017) (denying attorneys' fees entirely); *Greene v. Gibraltar Mortg. Inv. Corp.*, 529 F. Supp. 186, 190 (D.D.C. 1981) (awarding $16,880 in fees).

14

This Court has already determined that the TILA claim and breach of contract claim "***involve[] distinct facts relating to separate injuries***": "[T]he TILA claim arises out of the required disclosures under the statute and targets the harm to consumers," and "[t]he contract claims arise out of the terms of the agreements between Plaintiffs and Defendant and whether Defendant breached those agreements."  Op. & Order, ECF 108, PAGEID#1338 (emphasis added); *see also id.* at PAGEID#1337 ("[T]he differences in the operative facts necessary to give rise to Plaintiffs' contract claims and the TILA claim sufficiently outweigh what they have in common." (citation omitted)).  Plaintiffs themselves argued this:

> [R]egardless of whether the 'APR-disclosure allegations support' part of both the Plaintiffs' breach-of-contract and TILA claims, ***the two claims are legally distinct***. The Plaintiffs' breach of contract claim alleges that Fifth Third promised an APR of no greater than 120% while the TILA claim, by contrast, alleges a statutory right to accurate interest rate information.  Likewise, the contract claim alleges that Fifth Third breached its 120% APR promise by charging more than that amount while the TILA claim alleges that Fifth Third is liable for disclosing misleading information with respect to the interest rate the bank would charge.  And, finally, ***the injuries are distinct***: the Plaintiffs allege that Fifth Third's contract breach caused them to suffer overpayments while the TILA violation deprived the Plaintiffs of statutorily protected accurate information.

Reply, ECF 105, PAGEID#1315 (emphases added).  Plaintiffs prevailed in their arguments that these claims "are legally distinct" and got a final, appealable judgment.  Judicial estoppel prevents them from now disowning that position.  *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).

If Plaintiffs had prevailed on their breach of contract claim, they certainly would have sought a contingency fee and would not be entitled to double-count the TILA fees they now seek.  Having lost the primary claim in this litigation, counsel may not now ignore that the vast majority of their work was in service of a contingency fee on the contract claim.

### 2. Plaintiffs' Counsel's Lack of Success on the Merits Justifies an Additional Across-the-Board Reduction of the Lodestar.

The Court must also consider the Plaintiffs' limited success on the merits and decision to reject the settlement in 2016.  "An adjustment due to lack of success usually takes the form of an

15

across-the-board reduction of some percentage of the lodestar." *Hines v. DeWitt*, No. 2:13-cv-1058, 2016 WL 2342014, at *8 (S.D. Ohio May 4, 2016), *aff'd*, 676 F. App'x 546 (6th Cir. 2017); *see also Fulkerson v. Yaskawa Am., Inc.*, No. 3:13-cv-130, 2015 WL 6408120, at *11 (S.D. Ohio Oct. 23, 2015) (cutting lodestar by 67% due to "Plaintiff's limited success on the merits . . . and the extraordinary number of hours spent on this litigation after Plaintiff rejected the $50,000 settlement offer"). "Indeed, a trial court abuses its discretion when it does ***not*** consider the relationship between the fee awarded and the success obtained." *Hines*, 676 F. App'x at 556–57 (affirming 50% fee cut when verdict "was only a sliver of the monetary success Plaintiff sought" (cleaned up)). The Court must consider that Plaintiffs did not succeed on their primary claim, nor the 16 claims dismissed in 2015.

Equally important, the millions in fees Plaintiffs' incurred after October 2016 did not contribute one iota to Plaintiffs' "success." That is because Plaintiffs backed out of a settlement that would have resulted in a larger class award than they obtained after ***seven more years*** of litigation. *See supra* pp. 2–3. "Few, if any, reasonable litigants would call a monetary judgment that comes in well under the money offered to settle the case a success." *McKelvey v. Sec'y of U.S. Army*, 768 F.3d 491, 495 (6th Cir. 2014) (affirming 50% fee reduction because rejecting "a prior settlement offer more favorable than the final judgment bears on the plaintiff's degree of success"). "This is because in a case where a rejected settlement offer exceeds the ultimate recovery, the plaintiff—although technically the prevailing party—has not received any monetary benefits from the postoffer services of his attorney." *Kritcher v. Prudential Sec., Inc.*, 799 F. App'x 376, 379 (6th Cir. 2020) (cleaned up); *see also Fulkerson*, 2015 WL 6408120, at *11. Counsel's lack of success on the merits and decision to walk away from a settlement in 2016 are thus "relevant considerations 'peculiar to the subject litigation'" that justify an additional reduction to the lodestar. *See Miller*, 2013 WL 12227311, at *8.

Counsel spend much of their brief arguing that attorneys' fees can exceed the total recovery in TILA cases. Mot., ECF 303, PAGEID#10364–67. But it makes sense that courts do not apply a

bright line rule to cap fees, because "damages awarded in cases involving fee-shifting statutes are often quite small," and courts do not want to discourage attorneys from taking on meritorious cases. *Fulkerson*, 2015 WL 6408120, at \*8, \*9 (noting, however, a "gross disparity . . . deserves a much closer look"). *In re Pine*, 705 F.2d 936, 938 (7th Cir. 1983), illustrates this principle. There, the lower court had capped an attorney's fees at the amount of the $1,000 TILA judgment he won. The court of appeals reversed and awarded $2,500 in fees, noting that $1,000 represented "an extraordinarily parsimonious expenditure of time to prosecute a case." *Id.* But the court then held "[t]he amount of money at stake in a case is always highly relevant to the reasonableness" of a "fee request," and held spending 350 hours on a TILA claim, as counsel in a similar case did, "was obviously excessive." *Id.* at 939. In other words, it is one thing for a court to award fees exceeding a TILA recovery when those fees are $43,230, as in *Moore v. Cycon Enterprises, Inc.*, No. 1:04-CV-800, 2007 WL 2320051, at \*8 (W.D. Mich. Aug. 10, 2007); it is another thing entirely when the claimed fees are $5.6 million.

      **3.**    **Other Relevant Factors Also Support a Further Lodestar Adjustment.**

The other *Johnson* factors, such as "the novelty and difficulty" and "skill requisite to perform the legal service," also support a reduction for reasons set forth above. *Graceland Fruit*, 320 F. App'x at 329 (citation omitted). The final factor, "awards in similar cases," is especially compelling; Plaintiffs' counsel have not identified a single contested attorneys' fee award in a TILA case—in **any** jurisdiction—that remotely approaches what they seek here. *See Bell*, 784 F. Supp. 2d at 782, 784 (citation omitted) (reducing fee award by 80% as the "number of hours claimed . . . significantly exceeds the number of hours the Court has ever been asked to compensate a party in any similarly contested action"). In the cases with the largest fees—both still less than half of this claim —the claimant obtained much greater success. *See United States ex rel. Lefan v. Gen. Elec. Co.*, 397 F. App'x 144, 145–46 (6th Cir. 2010) ($2.2 million in fees and costs for winning $11.5 million); *Doe*, 2020 WL 728276, at \*11 ($3 million in fees for forcing Ohio Department of Education to redesign special

17

education system).[10]

*     *     *

Fifth Third thus proposes the Court adopt one of two paths to a reasonable fee award:

*Option 1*: Calculate an adjusted lodestar amount by multiplying the appropriate historical Rubin Committee rates by the number of hours billed adjusted as described in Section B, cut off on October 10, 2016 (the settlement date). This reduces the adjusted lodestar by $1,444,466 for a total fee award of *$310,068*. *See* Ex. 1, at ¶¶ 108–09.

*Option 2*: Alternatively, if the Court decides to allow some compensation after 2016, it could take the adjusted lodestar calculated in Section B, $1,754,534, and apply a 50% across-the-board reduction to account for the lack of success on the merits and breach of contract hours. That approach results in a fee award of *$877,267*. *See* Ex. 1, at ¶ 106.

## II. Plaintiffs' Costs Are Too High.

Plaintiffs' counsel's costs—more than *$315,000*—are similarly indefensible, and their motion makes no real effort to defend them, simply stating in a conclusory way that they have "identified the permissible costs [they have] borne in this action related to the TILA claim, all of which a firm would normally charge to a fee-paying client and thus should also be awarded." ECF 303, PAGEID##10356–57. Plaintiffs do not identify any costs they subtracted because they were incurred in support of the breach of contract claim. *Id.* The large legal research charges, expenses for depositions that had no relevance to the TILA claim, *see supra* pp. 3–4, and costs related to trial preparation were obviously attributable to the contract claim. *See* ECF Nos. 303-4; 303-7; 303-12. As determining which costs relate to which claim through "a line-by-line review of each invoice and

---

[10] These cases were also much more complicated than this TILA claim. As the *Doe* court explained, "this case was both factually and legally complex, as it concerned issues related to the special education services provided in hundreds of school districts throughout Ohio." *Doe*, 2020 WL 728276, at *13. *Lefan* involved a *qui tam* action pursuant to the False Claims Act concerning jet engine blades and vanes for military aircraft. 397 F. App'x at 145.

cost statement would be impractical and a waste of judicial resources," Fifth Third proposes the Court apply a **50%** "across-the-board reduction to plaintiffs' request for costs and expenses." *Howe v. City of Akron*, No. 5:06-cv-2779, 2016 WL 916701, at *24 (N.D. Ohio Mar. 10, 2016).

One large item should also be removed in its entirety: notice costs after class certification. ECF 303-4, PAGEID#10460. The "baseline rule" is that plaintiffs, not defendants, pay the cost of notice. 3 Newberg and Rubenstein on Class Actions § 8:32 (6th ed.) (citing the seminal decision of *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974), which held plaintiffs must bear the cost of notice to their class); *see also Hossfeld v. Lifewatch, Inc.*, No. 13 C 9305, 2021 WL 1422779, at *3 (N.D. Ill. Mar. 4, 2021) ("The proposition that the costs of notice normally rest with the plaintiff in a class action is longstanding and not controversial."). Although courts sometimes permit shifting the cost of notice, that is not automatic. "Even after the defendant's liability is established, 'the proper placement of notice costs is best left to the sound discretion of district courts,'" which "are not required in all cases to shift notice costs but instead may consider the totality of circumstances to decide whether shifting notice costs is just." *Vogt v. State Farm Life Ins. Co.*, No. 2:16-cv-04170-NKL, 2021 WL 627041, at *1 (W.D. Mo. Jan. 4, 2021) (citation omitted); *see Cobell v. Norton*, No. 96-1285 (RCL), 2005 WL 8182003, at *1–5 (D.D.C. Nov. 8, 2005) (requiring plaintiffs to pay for notice of fee petition to class members, despite being "prevailing party"). In the only case from this circuit that Plaintiffs cite on this point, the court recognized that its decision to shift the costs to defendant goes against "[t]he usual rule." *See Hook v. Baker*, No. C2-02-CV-901, 2004 WL 3113717, at *2–3 (S.D. Ohio Sept. 1, 2004) (citation omitted).

## III. Distribution Costs Should Be Paid Out of the Penalty.

In class actions, the costs of administration and distribution of payments generally come out of the common fund. *See, e.g., Thorn v. Bob Evans Farms, Inc.*, No. 2:12-cv-00768, 2016 WL 8140448, at *1 (S.D. Ohio Feb. 26, 2016); *Green v. Dressman Benzinger Lavelle, PSC*, No. 1:14–cv–00142–SJD,

2015 WL 223764, at *3 (S.D. Ohio Jan. 16, 2015).  The common fund is the $2 million judgment.

## IV.    Any Named Plaintiffs' Service Awards Should Come from the $2 Million Judgment.

Plaintiffs' counsel also seek service awards of $10,000 for each of the five named Plaintiffs.

While their brief does not say this, Plaintiffs' counsel informed Fifth Third that they seek the service

fees on top of the $2 million.  Controlling Sixth Circuit authority prohibits this:

> [I]ncentive awards are usually viewed as extensions of the common-fund doctrine, a
> doctrine that holds that a litigant who recovers a common fund for the benefit of
> persons other than himself is entitled to recover some of his litigation expenses from
> the fund as a whole.  Thus, when a class-action litigation has created a communal
> pool of funds to be distributed to the class members, courts have approved incentive
> awards to be drawn out of that common pool.  Without a common fund, however,
> there is no place from which to draw an incentive award.  Unsurprisingly, we are
> unable to find any case where a claim for an incentive award that is not authorized in
> a settlement agreement has been granted in the absence of a common fund.

*Hadix v. Johnson*, 322 F.3d 895, 898–99 (6th Cir. 2003) (citations omitted); *accord Estep v. Blackwell*, No.

1:06CV106, 2006 WL 3469569, at *7 (S.D. Ohio Nov. 29, 2006).  In Plaintiffs' cases, the awards

came from a common fund.  *See NorCal Tea Party Patriots v. IRS*, No. 1:13-cv-341, 2018 WL 3957364,

at *2–3 (S.D. Ohio Aug. 17, 2018); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 914 (S.D. Ohio 2001);

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373–74 (S.D. Ohio 1990).

If the Court awards incentive payments, they should come from the $2 million judgment.

Fifth Third defers to the Court as to whether they are appropriate and if so, in what amount.  *See*

*McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 668–69 (N.D. Ohio 2023) ("[T]he Sixth Circuit has

neither approved nor disapproved the practice of service awards to class representatives.").

## CONCLUSION

The Court should deny counsel's extraordinary fee and cost request and enter the more

reasonable award of $310,068 or, at most $877,267, proposed by Fifth Third.


Dated: February 9, 2024                          Respectfully submitted,

                                                 /s/ Enu A. Mainigi

Enu A. Mainigi (*pro hac vice*)
Craig D. Singer (*pro hac vice*)
Steven M. Pyser (*pro hac vice*)
Amy McKinlay (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue S.W.
Washington, DC 20024
Tel. (202) 434-5000
Fax (202) 434-5029
Email:  emainigi@wc.com
        csinger@wc.com
        spyser@wc.com
        amckinlay@wc.com

Karl Fanter (0075686)
Dante A. Marinucci (0089402)
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
Tel. (216) 621-0200
Fax (216) 696-0740
Email:  kfanter@bakerlaw.com
        dmarinucci@bakerlaw.com

*Attorneys for Fifth Third Bank*

**CERTIFICATE OF SERVICE**

On February 9, 2024, a copy of the foregoing was filed via the Court's Electronic Filing System.  Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF Systems.

Respectfully submitted,

/s/*Enu A. Mainigi*
Enu A. Mainigi