# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

William R. Klopfenstein, *et al*.,

    Plaintiffs,

    v.

Fifth Third Bank,

    Defendant.

Case No.  1:12cv851

Judge Michael R. Barrett

## **OPINION & ORDER**

This matter is before the Court upon Defendant Fifth Third Bank's Motion for Judgment as a Matter of Law as to Breach of Contract (Doc. 282) and Plaintiffs' Renewed Motion for Judgment as a Matter of Law or, In the Alternative, For a Partial New Trial (Doc. 284).  These motions have been fully briefed.  (Docs. 287, 288, 293, 294).

**I.**    **BACKGROUND**

Plaintiffs' claims arise out of Defendant's "Early Access" cash advance loan program.  Plaintiffs brought two claims on behalf of themselves and the class: (1) breach of contract; and (2) violation of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq*. ("TILA").

Early Access customers agreed to pay a transaction fee of $1 for every $10 borrowed—regardless of how long the loan remained outstanding.  As part of the disclosures required by TILA, the Early Access loan documents explained that the annual percentage rate ("APR") was 120%.  However, these same documents—which formed the contract between the parties—provided two different descriptions of "APR" which were inconsistent with each other and could not be reconciled.  *In re Fifth Third Early Access Cash Advance Litig*., 925 F.3d 265, 269 (6th Cir. 2019).  Specifically, the Early

Access contract states that APR is "calculated as a percent of the Advance amount multiplied by the number of statement cycles within a year," and provides formula and sample calculation: "$50 Advance with a $5 fee = $5/$50 = 10% X 12 Cycles = 120% APR." (Doc. 137-2, PAGEID 1649).  This formula for calculating APR is always 120% regardless of the length of the loan and conflicts with the contract's definition of APR which is that "APR is a measure of the cost of credit, expressed as a yearly rate." *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d at 271.  As the Sixth Circuit explained when this case was on appeal:

> No interpretation of the contract can give effect to one definition that specifies that APR is "expressed as a yearly rate" while also giving effect to a formula that precludes such an expression. Because the term "APR" as it appears in the contract is "reasonably susceptible of more than one interpretation," it is ambiguous as a matter of law. *Santana v. Auto Owners Ins. Co.*, 91 Ohio App.3d 490, 632 N.E.2d 1308, 1313 (1993).

925 F.3d at 280.  Because most Early Access customers paid off their loans in less than thirty days, these customers paid more than a 120% APR.  Plaintiffs claimed the APR disclosure was false and misleading and therefore violated TILA; and also claimed that Defendant breached the contract by charging Early Access customers more than 120% APR.

Before trial, this Court granted summary judgment in favor of Plaintiffs on their TILA claim (Doc. 209, PAGEID 6057-6060).  As to the contract claim, the Court found that there were genuine issues of material fact regarding the ambiguity surrounding the APR term; and therefore, the case proceeded to trial on Plaintiffs' breach of contract claim.  At the close of Plaintiffs' case-in-chief and at the close of all the evidence, Defendant moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a).  (Doc. 259, PAGEID 7882; Doc. 275, PAGEID 8820).  Plaintiffs also

moved for judgment as a matter of law on Defendant's voluntary payment defense. (Doc. 275, PAGEID 8824-8829; Doc. 268-1). The Court denied the motions. (Doc. 259, PAGEID 7895; Doc. 275, PAGEID 8824, 8829). The jury returned a general verdict in favor of Defendant on Plaintiffs' breach of contract claim. (Doc. 272, PAGEID 8643). In response to the Jury Interrogatories, the jury found that Defendant had breached the Early Access contract; but also found that the voluntary payment doctrine applied. (Doc. 272, PAGEID 8644). The jury did not award any damages. (Doc. 272, PAGEID 8645).

Pursuant to Federal Rule of Civil Procedure 50(b), Defendant renews its motion for judgment as a matter of law on the issue of whether the contract was breached. Plaintiff moves pursuant to Rules 50(b) and 59(e) for judgment as a matter of law on Defendant's voluntary payment defense and the issue of notice of contract modification.[1] In the alternative, Plaintiffs seek a new trial on Defendant's voluntary payment defense.

II. **ANALYSIS**

    A. **Standards of Review**

        1. **Federal Rule of Civil Procedure 50**

The term "motion for judgment as a matter of law" under Federal Rule of Civil Procedure 50 amalgamates the old terms "directed verdict" and "verdict JNOV." *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 974 F.3d 767, 779 (6th Cir. 2020) (citing *K & T Enterprises, Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175 (6th Cir. 1996)). Under the Rule, the movant must show that a "reasonable jury would not have a legally sufficient evidentiary basis" to find for the non-moving party. Fed. R. Civ. P. 50(a)(1). Federal Rule

---

[1] The issue of notice impacts the proper amount of damages attributable to Plaintiffs' breach of contract claim. Given the Court's ruling on Defendant's voluntary payment defense, the Court does not reach this issue.

3

50(b) provides:

> Renewing the Motion After Trial; Alternative Motion for a New Trial. If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. ... In ruling on the renewed motion, the court may:
>
> (1) allow judgment on the verdict, if the jury returned a verdict;
>
> (2) order a new trial; or
>
> (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b). "In diversity cases, when a Rule 50 motion for judgment as a matter of law is based on a challenge to the sufficiency of the evidence, this Court applies the standard of review used by the courts of the state whose substantive law governs the action." *Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 379 (6th Cir. 2022) (quoting *Kusens v. Pascal Co.*, 448 F.3d 349, 360 (6th Cir. 2006)). Under Ohio law, the standard of review is as follows:

> The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions.

*Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 742 (6th Cir.1999) (quoting *Gladon v. Greater Cleveland Reg'l Transit Auth.*, 75 Ohio St.3d 312, 662 N.E.2d 287, 294 (Ohio 1996)).

### 2. Federal Rule of Civil Procedure 59

A court may grant a new trial "for any reason for which a new trial has heretofore

been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The Sixth Circuit has interpreted Rule 59 to mean that "a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Caudill Seed & Warehouse Co.*, 53 F.4th at 379 (quoting *Mosby-Meachem v. Memphis Light, Gas, & Water Div.*, 883 F.3d 595, 606 (6th Cir. 2018)).

"When a party requests a new trial on the ground that the verdict is against the weight of the evidence, we will uphold the jury verdict if it is one 'the jury reasonably could have reached; we cannot set it aside simply because we think another result is more justified.'" *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015) (quoting *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 534 (6th Cir. 2014) (citation omitted). To the extent that Plaintiffs' Rule 50(b) and Rule 59(a) motions both challenge the sufficiency of the evidence, the Court will address them concurrently. *Accord E.E.O.C. v. New Breed Logistics*, 783 F.3d at 1066.

### B. Breach of contract

Plaintiffs claim that Defendant breached the contract by charging them an APR in excess of 120%. However, as explained above, the 120% APR term was found to be ambiguous as a matter of law. 925 F.3d at 280. "[I]n cases where ambiguity exists, interpretation of the parties' intent is a question to be determined by the trier of fact." *Mulch Mfg., Inc. v. Advanced Polymer Sols., LLC*, 947 F. Supp. 2d 841, 857 (S.D. Ohio 2013) (quoting *Schafer v. Soderberg & Schafer*, 196 Ohio App.3d 458, 477, 964 N.E.2d 24 (Ohio Ct. App. 2011) (internal quotations omitted)).

Defendant explains evidence was presented at trial which demonstrated that the parties intended for customers to pay $1 for every $10 advanced, regardless of the amount of time the loan was outstanding. Defendant explains that Plaintiffs' expert testified that the average class member used the Early Access program more than 67 times (Doc. 263, PAGEID 8412), and this course of conduct demonstrates that it was the intent of the parties for the Early Access loan to cost $1 for each $10 borrowed. Defendant maintains that they did not breach the contract because this is exactly what customers were charged.

This interpretation impermissibly ignores the 120% APR term. *See In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d at 280 ("Because we must 'give effect to every provision,' we cannot endorse an interpretation that would read language out of the contract entirely.") (quoting *Sunoco, Inc. (R & M) v. Toledo Edison Co*., 129 Ohio St. 3d 397, 408, 953 N.E.2d 285, 295 (Ohio 2011)). Defendant maintains that the 120% APR term was a regulatory disclosure and was based on an assumed 30-day repayment period. However, the Early Access contract itself makes no mention of this, and Plaintiffs testified that it was their expectation that Defendant was bound by all the terms of the contract. (See e.g., Doc. 255, PAGEID 7516, 7567; Doc. 255, PAGEID 7575 ("It should have been 120 and it shouldn't have been anything above that.")).

Furthermore, the jury was informed by Defendant's expert that the formula stated in the Early Access contract would be understood in the banking industry as fixed at 120%. (Doc. 253, PAGEID 7354). Multiple witnesses explained that if the industry standard formula for calculating APR was used, Defendant charged Plaintiffs in excess of the 120% APR. For example, Defendant's own former executive testified that "120 is

6

not accurate for a loan that's 14 days or 11 days or anything less than 31 days." (Doc. 259, PAGEID 8014). Plaintiffs' expert testified that the average length of an Early Access loan was approximately 10 days, and 97% of Early Access customers were charged an APR in excess of 120%. (Doc. 263, PAGEID 8401-8402). This evidence allowed the jury to reasonably conclude that Defendant breached the 120% APR term.

In addition, the jury was instructed that if the primary rules of contract construction failed to clarify the meaning of the contract; and "the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the non-drafting party." (Doc. 270, PAGEID 8627-8628). As a consequence, the jury could have reasonably relied on *contra proferentum* to resolve any ambiguity in the Early Access contract and construed the 120% APR term against Defendant. Using this interpretation, the jury could have reasonably concluded that the Early Access contract contained two cost terms: $1 for every $10 and 120% APR, and Defendant was bound by both.

The Court construes the evidence presented at trial strongly in favor of Plaintiffs as the nonmoving party and concludes that there is substantial evidence to support Plaintiffs' side of the case, upon which reasonable minds may reach different conclusions. Therefore, Defendant's Motion for Judgment as a Matter of Law (Doc. 282) is DENIED.

C. **Voluntary payment doctrine**

In Ohio, the voluntary payment doctrine is as follows: "In the absence of fraud, duress, compulsion or mistake of fact, money, voluntarily paid by one person to another on a claim of right to such payment, cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay." *Scott v. Fairbanks Cap.*

7

*Corp.*, 284 F. Supp. 2d 880, 894 (S.D. Ohio 2003) (quoting *State ex rel. Dickman v. Defenbacher*, 151 Ohio St. 391, 395, 86 N.E.2d 5, 7 (Ohio 1949)). Consequently, "a person who voluntarily pays another with full knowledge of the facts will not be entitled to restitution." *Id.* (quoting *Randazzo v. Harris Bank Palatine*, 262 F.3d 663, 667 (7th Cir. 2001)). "Whether a person made a payment voluntarily, with full knowledge of the facts at issue, is primarily an issue of fact." *Fox v. TransUnion, LLC*, No. 1:17-cv-362, 2018 WL 11433351, at *3 (S.D. Ohio Aug. 1, 2018).

The voluntary payment doctrine is an affirmative defense. *Schwebel Baking Co. v. FirstEnergy Sols. Corp.*, No. 4:17CV0974, 2018 WL 1419477, at *4 (N.D. Ohio Mar. 21, 2018). Plaintiffs argue that this Court should enter judgment as a matter of law against Defendant under Rules 50(b) and 59(e) on its voluntary payment defense; or in the alternative, the Court should grant a new trial on Defendant's affirmative defense of voluntary payment.

In support of its Motion for Judgment as a Matter of Law, Plaintiffs argue that the voluntary payment doctrine is an equitable defense; and because the Court held that Defendant violated TILA, Defendant should have been barred from availing itself of this defense. Defendant responds that Plaintiffs waived this argument as a matter of law because they did not make this argument in their Rule 50(a) motion during trial.

While Plaintiffs may not have raised this exact argument in their Rule 50(a) motion, they made a related argument that Defendant's voluntary payment defense fails because Defendant misrepresented the APR. (Doc. 268-1, PAGEID 8601-8602).[2] In essence,

---

[2]To the extent that Plaintiffs argue that Defendant is barred from relying on the voluntary payment defense based on a showing of unclean hands, Plaintiffs do not cite to caselaw which would directly support this conclusion. Therefore, Plaintiffs have not shown that Defendant is barred from relying on their voluntary payment defense as a matter of law.

8

Plaintiffs argue that they did not have full knowledge of the facts because of Defendant's misleading disclosure regarding the 120% APR. Therefore, the Court finds that Plaintiffs did not waive this argument and will address it here.

Plaintiffs analogize this case to *Arlington Video Prods., Inc. v. Fifth Third Bancorp*, 569 F. App'x 379, 389 (6th Cir. 2014). There, the Sixth Circuit held that the voluntary payment doctrine did not bar the plaintiff's breach of contract claim. *Id*. at 389. The court explained the plaintiff did not pay fees charged by the Bank with full knowledge of the facts because "[t]he Bank did not disclose to Arlington all of the facts relating to the deposit adjustment fee or the increase in the returned item fee before automatically withdrawing those fees from Arlington's account and listing unexplained 'service charges' on the monthly bank statements." 569 Fed.Appx. at 389.[3] In contrast, information about the APR was disclosed to Early Access customers in the contract. However, as the evidence at trial confirmed, the information Defendant provided to its customers about the APR mislead those customers.

What follows is a summary of this evidence because, for the most part, the trial testimony of the class members was the same. Even though the average customer took out multiple Early Access loans, Plaintiffs testified that they did not know that they were being charged an APR which exceeded the 120% APR stated in the Early Access contract. (See, e.g., Doc. 253, PAGEID 7448-7449). Plaintiffs also testified that they did not read the contract before signing it, did not remember seeing the 120% APR term when they read the contract, or did not an understanding of what "APR" meant. (See, e.g., Doc. 255, PAGEID 7515, 7520, 7567-7568). Moreover, when asked about the formula in the

---

[3]In *Arlington Video*, the contract itself required the Bank "to disclose the fees and any changes to them *before* assessing the fees." 569 Fed. Appx. at 390 (emphasis in original).

9

Early Access contract used to calculate the APR, one Plaintiff testified as follows:

> Q. Any idea whether or not that formula is accurate sitting here today?
>
> A. If I'm seeing it in black and white, I would have to say it's accurate because it's written.
>
> Q. Is that because you believe if it's in the contract, it should be accurate?
>
> A. It should be accurate.
>
> Q. Can you do the math and know whether it's accurate sitting here?
>
> A. No.
>
> Q. At the time you opened your account, would you have been able to confirm whether or not this formula was accurate?
>
> A. No.

(Doc. 255, PAGEID 7569). Another Plaintiff testified that she knew that "APR is an acronym for Annual Percentage Rate" but did not have an understanding of how it is calculated. (Doc. 263, PAGEID 8324). Instead, she testified that she assumed that the 120% APR which appeared in the Early Access contract was correct. (Doc. 263, PAGEID 8324). Similarly, when asked about the terms of the contract, another Plaintiff testified as follows:

> Q. And there came a time, after you saw your monthly statements listing your early access activity, that you understood you were being charged 10 percent for the loans you took out, correct?
>
> A. I understood I was being charged about $10, you know, for every $100 I took out, but I thought that was 120 percent, sir.

(Doc. 253, PAGEID 7472).

Therefore, the evidence at trial was that Defendant's Early Access loan customers believed that the 120% APR term was accurate and trusted the information Defendant provided to them. From this evidence, a reasonable jury could have concluded that

Plaintiffs had "full knowledge of the facts," even though Defendant had provided them with the information in such a way that they were mislead into paying an APR which exceeded the 120% promised in the contract.  "A payment made by reason of a wrong construction of the terms of a contract is not made under a mistake of fact, but under a mistake of law, and if voluntary cannot be recovered back." *Salling v. Budget Rent-A-Car Sys., Inc.*, 672 F.3d 442, 445 (6th Cir. 2012) (quoting *Nationwide Life Ins. Co. v. Myers*, 67 Ohio App.2d 98, 425 N.E.2d 952, 956 (Ohio Ct. App. 1980)).  Therefore, Plaintiffs are not entitled to judgment as a matter of law under Rule 50.

For the same reason, the jury's verdict was not "seriously erroneous" under Rule 59 because there was sufficient evidence in the record to support the verdict.

**C.    New trial based on jury instruction**

Plaintiffs also argue that they are entitled to a new trial under Rule 59 because the Court gave an improper jury instruction on the voluntary payment doctrine.  The instruction was as follows:

> If you determine by the greater weight of the evidence that Defendant breached the contract, consider the following about the voluntary payment doctrine.
>
> Defendant claims that, even if it violated the Early Access Loan Agreement, Early Access loan customers voluntarily paid the amount of money in dispute. This is called an affirmative defense. Defendant has the burden of proving this affirmative defense by a preponderance of the evidence.
>
> The voluntary payment doctrine is a legal principle that provides that when a plaintiff pays money with full knowledge of all the relevant facts, plaintiff has made that payment voluntarily and is not entitled to any recovery. You have heard evidence that the named Plaintiffs are personally not seeking damages for loans after the filing of this lawsuit. You may still consider actions by the named Plaintiffs after they filed suit that have been admitted into evidence. However, a payment is not voluntary when the plaintiff pays without full and actual knowledge of the facts. Defendant contends Plaintiffs cannot recover, as they paid for these loans with the full understanding of

11

> all relevant facts. Plaintiffs deny that they had a full understanding of all relevant facts.

(Doc. 270, PAGEID 8629).

"A party is not entitled to a new trial based upon alleged deficiencies in the jury instructions unless the instructions, taken as a whole, are misleading or give an inadequate understanding of the law." *Miami Valley Fair Hous. Ctr., Inc. v. Connor Grp.*, 725 F.3d 571, 579 (6th Cir. 2013) (quoting *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 966 (6th Cir.1998)). However, there must be "both an error in jury instructions and resulting prejudice before reversal is justified." *Roberts ex rel Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 787 n.3 (6th Cir. 2003). "In a diversity case, state law determines the substance of jury instructions, but federal law governs the standard of review and any questions concerning the propriety of the instructions." *Chapman v. Milford Towing & Serv., Inc.*, 499 F. App'x 437, 442 (6th Cir. 2012) (citing *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 449 (6th Cir. 2000)).

Plaintiffs argue that voluntary payment instruction confused the jury, as demonstrated by the written question the jury submitted during the second day of deliberations: "can we get more information on the voluntary payment doctrine? i.e. full document." (Doc. 277, PAGEID 9008; Minute Entry (4/27/2023)). The Court responded to their question in writing as follows: "You have seen and heard all the evidence in this case. The voluntary payment doctrine is a legal principle explained in the jury instructions. Please see page 24 of the jury instructions." (Doc. 277, PAGEID 9013; Minute Entry (4/27/2023)).

"[A] jury is presumed to understand a judge's answer to its question." *Weeks v. Angelone*, 528 U.S. 225, 234, 120 S. Ct. 727, 733, 145 L. Ed. 2d 727 (2000) (citing

*Armstrong v. Toler*, 11 Wheat. 258, 279, 6 L.Ed. 468 (1826)).  The jury in this case did not seek additional guidance after the Court responded to their question (Doc. 277, PAGEID 9013), so "it may fairly be presumed that they had nothing further to ask." *Id*.

Next, Plaintiffs argue that the voluntary payment instruction failed to provide any guidance as to what facts were relevant in analyzing the voluntary payment document. Plaintiffs maintain that the Court should have given their requested instruction: "In this case, you must decide whether Plaintiffs voluntarily paid for the Early Access Loans with full and actual knowledge that the loans had APRs that exceeded 120 percent, expressed as a yearly rate." (Doc. 221, PAGEID 6525).  With regard to the failure to give a requested instruction, the Sixth Circuit has explained:

> A district court's refusal to give jury instructions is reversible error if: "(1) the omitted instructions are a correct statement of the law; (2) the instruction is not substantially covered by other delivered charges; [and] (3) the failure to give the instruction impairs the requesting party's theory of the case." *Hisrich*, 226 F.3d at 449 (quoting *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 820 (6th Cir. 1999)).

*House v. Player's Dugout, Inc.*, No. 22-5843, 2024 WL 495998, at *14 (6th Cir. Feb. 8, 2024).

To begin, Plaintiffs do not provide any support that a correct statement of Ohio law regarding the voluntary payment doctrine includes a requirement that payment be made with "with full and *actual* knowledge."[4]  Instead, the doctrine only requires "full knowledge

---

[4]Moreover, as one district court has observed:

> There is precedent suggesting that a plaintiff who negligently fails to learn the facts underlying a payment will not be able to take advantage of the mistake of fact exception to the voluntary payment doctrine. *See Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 823–24 (7th Cir. 2010) ("It is no exception to the voluntary-payment doctrine when the plaintiff makes no effort to ascertain the factual basis of the [charge] but pays it anyway." (internal citation and quotation marks omitted)); *Chris Albritton Constr. Co. v. Pitney Bowes Inc.*, 304 F.3d 527, 532 (5th Cir. 2002)

13

of the facts."[5] To the extent that the Court incorporated that phrase in the instruction, it was to Plaintiffs' advantage because it created a greater burden of proof for Defendant.

In addition, Plaintiffs do not articulate how they were impaired from arguing their theory of the case. Plaintiffs certainly presented evidence and argued that Plaintiffs did not have "full and actual knowledge that the loans had APRs that exceeded 120 percent, expressed as a yearly rate." This theory was referenced by counsel throughout Plaintiffs' closing argument:

> A payment is not voluntary unless they have full knowledge, unless the party has full knowledge of all the facts. . . . And the most important relevant fact that [Plaintiffs] did not have any knowledge of was that they were paying higher than 120 percent APR. (Doc. 276, PAGEID 8883).
>
> And the only evidence on this issue is that nobody knew that they were paying more than 120 percent until they met with their lawyers. (Doc. 276, PAGEID 8883).
>
> Of course [Plaintiffs] knew about 1-for-10. That's not knowledge of all of the facts. All the facts includes whether they were paying higher than 120

---

> ("Regarding excusable ignorance, the voluntary payment doctrine precludes courts from extending relief to those who have neglected to take care of their interests and are in predicaments which ordinary care would have avoided." (internal citation and quotation marks omitted)).

Cappalli v. BJ's Wholesale Club, Inc., 904 F. Supp. 2d 184, 195 (D.R.I. 2012).

[5] While the phrase "full knowledge of the facts" is often relied upon by courts in Ohio, this phrase is borrowed from the Seventh Circuit. As this Court recently explained:

> The voluntary payment doctrine under Ohio law provides that "'[i]n the absence of fraud, duress, compulsion or mistake of fact, money, voluntarily paid by one person to another on a claim of right to such payment, cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay." Scott v. Fairbanks Capital Corp., 284 F. Supp. 2d 880, 894 (S.D. Ohio 2003). The Seventh Circuit, while not binding on this Court, stated this doctrine simply as, "a person who voluntarily pays another with full knowledge of the facts will not be entitled to restitution." Randazzo v. Harris Bank Palatine, 262 F.3d 663, 667 (7th Cir. 2001).

Student Res. Ctr., LLC v. E. Gateway Cmty. Coll., No. 2:22-CV-2653, 2024 WL 3849440, at *9 (S.D. Ohio Aug. 15, 2024).

> percent APR.  (Doc. 276, PAGEID 8893).
>
> Now, this Voluntary Payor Doctrine, you heard me talking about that, right? I was talking about that for a while.  Did the plaintiffs have knowledge of all the facts? Did they know that they were paying more than 120 percent? I think you should say no, they did not.  (Doc. 276, PAGEID 8898).

There is no requirement that the Court make this argument for Plaintiffs in the jury instructions. *Accord United States v. Frost*, 125 F.3d 346, 372 (6th Cir. 1997) ("It is not error refuse to give special instructions which merely represent [one party's] view of the facts of the case.").  Along those same lines, the Court was not obligated to instruct the jury that Defendant violated TILA or that the contract was misleading.  As a general matter, "at trial, parties may not reference claims that were previously disposed of by the court at the summary judgment stage in the proceedings." *Holloway v. Kings Dodge, Inc.*, No. 1:16-CV-1075, 2019 WL 13093580, at *2 (S.D. Ohio Aug. 23, 2019) (citing cases).

Plaintiffs maintain that the Court's interrogatory to the jury on voluntary payment compounded the erroneous and prejudicial voluntary payment instruction, did not conform to the evidence and argument presented at trial, and resulted in inconsistent findings. This Jury Interrogatory asked the jury to decide: "Did Defendant prove by the greater weight of the evidence that the voluntary payment doctrine applies to the class?"  (Doc. 272-1, PAGEID 8644).  Plaintiffs explain that the jury's findings were inconsistent because they found that Defendant breached the Early Access contract by charging Plaintiffs more than 120% but then also found that Plaintiffs had full knowledge of the facts—even though there was no evidence that Plaintiffs were aware that they were being charged more than 120%.  Plaintiffs explain that before the Jury was discharged, counsel requested that a special interrogatory be posed to the jury which asked "at what point in time or – parenthetical -- (date) do you find that the class made payment will full knowledge of all

factual circumstances relating to Fifth Third's breach of the APR term?" (Doc. 277, PAGEID 9028). Plaintiffs maintain that this interrogatory would have clarified the basis for the jury's verdict with regard to voluntary payment and cured the inconsistency before the jury was discharged.

Plaintiffs' argument that there was an inconsistency between a finding in their favor on the contract claim, and a finding in favor of Defendant on the voluntary payment doctrine can be easily disposed of. As explained above, voluntary payment is an affirmative defense, and the jury was instructed:

> Defendant claims that, even if it violated the Early Access Loan Agreement, Early Access loan customers voluntarily paid the amount of money in dispute. This is called an affirmative defense. Defendant has the burden of proving this affirmative defense by a preponderance of the evidence.

(Doc. 270, PAGEID 8629). This is an accurate description of the law in Ohio and a jury finding in Defendant's favor on its affirmative defense does not create an inconsistency with the verdict on the breach of contract claim. *See Salling v. Budget Rent-A-Car Sys., Inc.*, 672 F.3d 442, 445 (6th Cir. 2012) (concluding that it was unnecessary to reach the contract interpretation issue after finding the defendant was entitled to summary judgment on its defense under the voluntary payment doctrine).

However, to the extent that Plaintiffs challenge the reference in the instruction to Plaintiffs' post-lawsuit loans, the Court notes that it was Plaintiffs—on direct examination—who introduced the evidence of post-lawsuit loans made by the named Plaintiffs after they consulted with counsel and learned that they had been charged in excess of 120% APR. (Doc. 253, PAGEID 7465; Doc. 255, PAGEID 7559). There was never any dispute that these post-lawsuit loans Plaintiffs would be excluded from Plaintiffs' damages. The Court acknowledged this when ruling on Plaintiffs' summary

16

judgment motion. (Doc. 209, PAGEID 6053) ("Plaintiffs concede that the voluntary payment defense may apply to payments made by named Plaintiffs after they filed this lawsuit. Accordingly, [they] do not seek to recover for those payments."). In addition, counsel for Plaintiffs explained this during closing arguments. (Doc. 276, PAGEID 8883) ("And all of the plaintiffs also came forward and said that any charges they incurred after they knew, after they had full knowledge, was not going to be included in what they asked you to deliver as the verdict today."). While it may have been somewhat inartful, the instruction[6] was an attempt to capture the agreement that the post-lawsuit loans testified to by the named Plaintiffs were not to be considered as part of the damages calculation, but at the same time, allow the jury to consider the post-lawsuit loans made by them as evidence relevant to the rest of the class, because the named Plaintiffs were claiming damages on behalf of the class based on post-lawsuit loans. (See Doc. 275, PAGEID 8749-8763). This concept is confusing, but the instruction reflects the evidence presented at trial and the scope of Plaintiffs' claims. It was undisputed that the named Plaintiffs did not know that they were paying over 120% APR until they met with counsel. However, the named Plaintiffs could not agree to take their own post-lawsuit loans out of the damages equation because they learned that they were being charged more than 120%

---

[6]For ease of reference, this portion of the instruction is reproduced here:

> The voluntary payment doctrine is a legal principle that provides that when a plaintiff pays money with full knowledge of all the relevant facts, plaintiff has made that payment voluntarily and is not entitled to any recovery. You have heard evidence that *the named Plaintiffs* are personally not seeking damages for loans after the filing of this lawsuit. You may still consider actions by *the named Plaintiffs* after they filed suit that have been admitted into evidence. However, a payment is not voluntary when the plaintiff pays without full and actual knowledge of the facts.

(Doc. 270, PAGEID 8629) (emphasis added).

APR; but then at the same time continue to make Early Access loans and claim that as representatives of the class, they had no knowledge that they were being charged more than 120% APR.

This Court must "not set aside a jury verdict on the basis of a technically faulty jury instruction when the error is harmless." *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 274 (6th Cir.2009) (citing *Barnes v. Owens–Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000)).  Prejudice exists only where "there is a substantial risk that the outcome of the trial was affected." *Flex Homes, Inc. v. Ritz-Craft Corp of Michigan, Inc.*, 491 F. App'x 628, 636 (6th Cir. 2012) (citing *Whitson v. Knox Cnty. Bd. of Educ.*, 468 Fed.Appx. 532, 537–38 (6th Cir. 2012)).  While the mention of the "named Plaintiffs" may have caused some confusion, when viewed as a whole, the instruction is not confusing.  The instruction emphasized the critical concept for the jury to decide by repeating it twice: a plaintiff makes a payment voluntarily "when a plaintiff pays money with full knowledge of all the relevant facts," and "a payment is not voluntary when the plaintiff pays without full and actual knowledge of the facts."  (Doc. 270, PAGEID 8629).  Because any error here was harmless, the Court finds a new trial is not warranted on this basis.

Finally, Plaintiffs maintain that Defendant was allowed to present improper legal argument on its voluntary payment defense in closing arguments.  Plaintiffs explain that Defendant misstated the law by suggesting that payment was "voluntary" unless Plaintiffs demonstrated the payments were made under duress.  However, the Court instructed the jury that "[t]he lawyers may talk about the law during their arguments. But if what they say is different from what I say, you must follow what I say."  (Doc. 270, PAGEID 8608).  "A

jury is presumed to follow its instructions." *Hubbell v. FedEx SmartPost, Inc.,* 933 F.3d 558, 574 (6th Cir. 2019) (quoting *Blueford v. Arkansas,* 566 U.S. 599, 606, 132 S.Ct. 2044, 182 L.Ed.2d 937 (2012)). Plaintiffs have not overcome this presumption. In addition, while counsel for Plaintiffs did make an objection during Defendant's closing argument (Doc. 276, PAGEID 8918), it was not on this point. When "counsel does not object to the relevant comments at trial, the failure to object raises the degree of prejudice which must be demonstrated for this Court to grant the request for a new trial." *Appalachian Reg'l Healthcare, Inc. v. U.S. Nursing Corp.*, 68 F.4th 324, 335 (6th Cir. 2023) (quoting *CFE Racing Prod., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 590 (6th Cir. 2015) (cleaned up). The Sixth Circuit has "found statements that were 'egregious' or 'outrageous' to have met this standard." *Id.* No such statements exist here. Therefore, the comments were not so prejudicial as to mandate a new trial. *See Strickland v. Owens Corning*, 142 F.3d 353, 358 (6th Cir. 1998).

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that:

1. Defendant Fifth Third Bank's Motion for Judgment as a Matter of Law as to Breach of Contract (Doc. 282) is **DENIED**; and

2. Plaintiffs' Renewed Motion for Judgment as a Matter of Law or, In the Alternative, for a Partial New Trial (Doc. 284) is **DENIED**.

**IT IS SO ORDERED.**

                                                 */s/ Michael R. Barrett*
                                                 JUDGE MICHAEL R. BARRETT