UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

William R. Klopfenstein, *et al.*,

    Plaintiffs,

           v.

Fifth Third Bank,

    Defendant.

Case No. 1:12cv851

Judge Michael R. Barrett

## OPINION & ORDER

This matter came on for consideration of Plaintiffs' Motion for Attorney Fees, Costs and Incentive Awards (Doc. 303) together with Defendant's Response (Doc. 304) and Plaintiffs' Reply (Doc. 311).

This class action arises out of Defendant's "Early Access" cash advance loan program. Following this Court's ruling on Defendant's Motion to Dismiss and an appeal of that decision to the Sixth Circuit, the following claims remained: (1) breach of contract; and (2) violation of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq*. ("TILA").[1] This Court granted summary judgment in favor of Plaintiffs on their TILA claim (Doc. 209, PAGEID 6057-6060); but a jury returned a general verdict in favor of Defendant on Plaintiffs' breach of contract claim (Doc. 272, PAGEID 8643).

---

[1]Plaintiffs also brought claims for: (1) violations of the Electronic Funds Transfer Act; (2) violation of 12 U.S.C. § 1831(d); (3) conversion; (4) unjust enrichment under Ohio law; (5) unjust enrichment under Illinois law; (6) unjust enrichment under Tennessee law; (7) unjust enrichment under Kentucky law; (8) unjust enrichment under Florida law; (9) unjust enrichment under Michigan law; (10) unjust enrichment under Indiana law; (11) fraud under Ohio law; (12) fraud under Tennessee law; (13) fraud under Florida law; (14) fraud under Indiana law; (15) violation of Illinois' Consumer Fraud and Deceptive Business Practice Act; and (16) violation of Kentucky's Consumer Protection Act. (Doc. 68). These claims were dismissed in this Court's ruling on Defendants' Motion to Dismiss. (Doc. 89).

1

"Section 1640(a)(3) of the TILA provides that a successful plaintiff is entitled to 'reasonable attorney fees, as determined by the Court.'" *Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797 (6th Cir. 1996) (quoting 15 U.S.C. § 1640(a)(3)). "The starting point for determining a reasonable fee is the lodestar, which is the product of the number of hours billed and a reasonable hourly rate." *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007). "To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (citing *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)).

"From there, the district court may adjust the figure based on 'relevant considerations peculiar to the subject litigation.'" *Betancourt v. Indian Hills Plaza LLC*, 87 F.4th 828, 831 (6th Cir. 2023) (quoting *Adcock-Ladd*, 227 F.3d at 349). "'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S. Ct. 1933, 1943, 76 L. Ed. 2d 40 (1983)). As the Supreme Court has explained:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Id*. at 440.

2

If the plaintiff has only achieved "limited success," a court must decide by what amount to discount the total amount of fees. *Richard v. Caliber Home Loans, Inc.*, 832 F. App'x 940, 946 (6th Cir. 2020) (finding that the district court did not abuse its discretion by reducing total fee award by 30 percent where the plaintiff did not prevail on two of his four claims).  As part of this analysis, the Court must address two issues: "(1) whether the claims on which the plaintiff failed to prevail were or were not related to the claims on which he or she succeeded, and (2) whether the plaintiff achieved a sufficient degree of success to render the hours reasonably expended a satisfactory basis for awarding attorney fees." *Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) (citing *Hensley*, 461 U.S. at 434).

Plaintiffs maintain they are entitled to all attorney fees directly attributable to the TILA claim; but are not seeking fees related to work which only supported their breach of contract claim (which they estimate to be 15% of their time) or any time logged after the Court's summary judgment ruling on Plaintiffs' TILA claim (Doc. 303, PAGEID 10361). Plaintiffs explain that the appropriate amount of fees is $5,638,622.53 for all attorney/paralegal work on the litigation. Plaintiffs also seek $315,572.13 in costs and $50,000 in class representative service awards ($10,000 for each of the five class representatives).  Plaintiffs also request that Defendant pay the cost of class notice and distribution of the individual awards.

In support of Plaintiffs' Motion for Attorney Fees, Plaintiffs supplied the Court with various timesheets and billing records of the timekeepers involved in this litigation, as well as cost sheets.  Plaintiffs seek remuneration in accordance with the "LSI Adjusted Laffey Matrix" for fees on hourly rates or hourly rates which approximate the Matrix.  *See* Laffey

Matrix, http://www.laffeymatrix.com/see.html (last visited Feb. 25, 2025).[2] Relevant portions of the Laffey Matrix are shown here:

| Year | Adjustmt Factor** | Paralegal/ Law Clerk | Years Out of Law School * | | | | |
|---|---|---|---|---|---|---|---|
| | | | 1-3 | 4-7 | 8-10 | 11-19 | 20 + |
| 6/01/24- 5/31/25 | 1.080182 | $258 | $473 | $581 | $839 | $948 | $1141 |
| 6/01/23- 5/31/24 | 1.059295 | $239 | $437 | $538 | $777 | $878 | $1057 |
| 6/01/22- 5/31/23 | 1.085091 | $225 | $413 | $508 | $733 | $829 | $997 |
| 6/01/21- 5/31/22 | 1.006053 | $208 | $381 | $468 | $676 | $764 | $919 |
| 6/01/20- 5/31/21 | 1.015894 | $206 | $378 | $465 | $672 | $759 | $914 |
| 6/01/19- 5/31/20 | 1.0049 | $203 | $372 | $458 | $661 | $747 | $899 |
| 6/01/18- 5/31/19 | 1.0350 | $202 | $371 | $455 | $658 | $742 | $894 |
| 6/01/17- 5/31/18 | 1.0463 | $196 | $359 | $440 | $636 | $717 | $864 |
| 6/01/16- 5/31/17 | 1.0369 | $187 | $343 | $421 | $608 | $685 | $826 |
| 6/01/15- 5/31/16 | 1.0089 | $180 | $331 | $406 | $586 | $661 | $796 |
| 6/01/14- 5/31/15 | 1.0235 | $179 | $328 | $402 | $581 | $655 | $789 |
| 6/01/13- 5/31/14 | 1.0244 | $175 | $320 | $393 | $567 | $640 | $771 |
| 6/01/12- 5/31/13 | 1.0258 | $170 | $312 | $383 | $554 | $625 | $753 |
| 6/01/11- 5/31/12 | 1.0352 | $166 | $305 | $374 | $540 | $609 | $734 |
| 6/01/10- 5/31/11 | 1.0337 | $161 | $294 | $361 | $522 | $589 | $709 |

---

[2]As one district court explained:

> the "Laffey Matrix," a tool developed by the United States Department of Justice and adjusted by the nationwide legal services component of the Consumer Price Index that is used by courts to determine appropriate market rates for attorneys who practice in the Washington, D.C. area. . . . The Sixth Circuit and a court in this district have used the Laffey Matrix to determine the reasonable hourly rates of Washington, D.C. attorneys where the hiring of Washington, D.C. attorneys was deemed reasonable . . .

*Tyson v. Sterling Rental, Inc.*, Case No. 13-CV-13490, 2019 WL 3554713, at *10 (E.D. Mich. Apr. 17, 2019), *adopted* 2019 WL 3024719 (E.D. Mich. July 11, 2019) (citing *Adcock-Ladd*, 227 F.3d at 347 n.3, 351; *Entm't Software Ass'n v. Granholm*, No. 05-73634, 2006 WL 6306504, at *3 (E.D. Mich. Nov. 30, 2006)).

Defendant does not dispute that Plaintiffs are entitled to fees. Instead, Defendant opposes the amount of fees requested. As to the hourly rate, Defendant maintains that the Court should use the Rubin Committee rates, which are hourly rates identified by the Rubin Committee in 1983, adjusted upward each year by 4% for inflation. Judges in the Southern District of Ohio often rely on the Rubin Committee rates to make determinations regarding the reasonableness of rates for the area. *See HealthCare Facility Mgmt. LLC v. Engnan*, No. 1:23-CV-246, 2023 WL 5846874, at *4, n.22 (S.D. Ohio Sept. 11, 2023) (citing cases). These rates are tiered by years of experience:

| Position | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Senior Partner (21+ years) | $383 | $399 | $416 | $433 | $450 | $468 | $487 | $506 | $527 | $548 | $570 | $592 | $616 |
| Intermediate Partner (11-20 years) | $339 | $353 | $367 | $383 | $398 | $414 | $430 | $448 | $466 | $484 | $504 | $524 | $545 |
| Young Partner (6-10 years) | $288 | $300 | $312 | $325 | $338 | $352 | $366 | $380 | $396 | $411 | $428 | $445 | $463 |
| Senior Associate (4-5 years) | $247 | $257 | $268 | $279 | $291 | $302 | $314 | $327 | $340 | $353 | $368 | $382 | $398 |
| Intermediate Associate (2-4 years) | $214 | $223 | $232 | $242 | $251 | $261 | $272 | $283 | $294 | $306 | $318 | $331 | $344 |
| Young Associate (>2 years) | $184 | $192 | $200 | $208 | $217 | $225 | $234 | $244 | $254 | $264 | $274 | $285 | $297 |
| Paralegal | $113 | $118 | $123 | $128 | $133 | $138 | $144 | $150 | $156 | $162 | $168 | $175 | $182 |
| Law Clerk | $72 | $74 | $78 | $81 | $84 | $87 | $91 | $95 | $98 | $102 | $106 | $111 | $115 |

Defendant also argues that the number of hours claimed by Plaintiffs is not reasonable. Defendant maintains that Plaintiffs' assertion that only 15% of attorney time was spent solely on the breach of contract claim overstates the overlap between the breach of contract claim the TILA claims. (Doc. 304, PAGEID 10835). Defendant also maintains that Plaintiffs' lack of success on their other dismissed claims justifies an across-the-board reduction of the lodestar amount; and there should be a reduction for duplicative or excessive billing due to a TILA claim's relative lack of complexity. In addition, Defendant maintains a 20% reduction should be applied to any block billing; and

5

any vague entries and clerical fees should be removed from the calculation of fees. As to costs, Defendant proposes that the Court apply a 50% across-the-board reduction to Plaintiffs' request for costs and expenses; and Plaintiffs should pay for the cost of notice in its entirety. Finally, Defendant maintains that the cost of distribution and any service awards to the named Plaintiffs should be paid out of the judgment.

## **Appropriate Rate**

This case began in the Northern District of Ohio and was subsequently transferred to this Court. The case was later consolidated with similar cases from Western District of Kentucky, Middle District of Tennessee, Southern District of Illinois and the Southern District of Florida. (Doc. 65). The case involves a defendant who does business on a multi-state level, across various jurisdictions.[3] Therefore, this Court must consider whether out-of-market rates are appropriate and constitute a reasonable hourly rate under the circumstances.

Out-of-market rates for counsel are appropriate when they have "expertise and national practice." *Doe v. Ohio*, Case No. 2:91-CV-00464, 2020 WL 728276, at *11 (S.D. Ohio Feb. 12, 2020), *adopted* Case No. 2:91-CV-464, 2020 WL 996561 (S.D. Ohio Mar. 2, 2020) (citing *U.S. ex rel. Lefan v. Gen. Elec. Co.*, 397 F. App'x 144, 146 (6th Cir. 2010) and *Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983) (district courts may "look to a national market ... or any other market they believe appropriate to fairly compensate particular attorneys in individual cases")). "When fees are sought for an out-of-town specialist, courts must determine (1) whether hiring the out-

---

[3]As the Sixth Circuit recognized when this case was on appeal: "Fifth Third is a state-chartered, federally insured bank headquartered in Ohio, with branches in several states, including Ohio, Michigan, Kentucky, and Tennessee." *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 269-270 (6th Cir. 2019).

6

of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995) (citing *Chrapliwy v. Uniroyal, Inc*., 670 F.2d 760, 768-69 (7th Cir. 1982); *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983)).

This Court has relied upon the Rubin Committee rates in the past. However, because these cases spawned from several jurisdictions and were consolidated before this Court, counsel on both sides have come from outside the Southern District of Ohio. Counsel for Plaintiffs submitted declarations, resumes, and documentation, which confirm their nationwide status and practices. Over the course of this litigation, the Court has become quite familiar with the Tycko & Zavareei law firm and the other firms representing Plaintiffs. The Court had the opportunity to read and observe all of the attorneys' work in this case and is confident in their status and ability. This is a national practice case, requiring specialized knowledge and expertise, and, frankly, the Rubin rates do not provide sufficient compensation for this particular matter. Instead, the Court will rely upon the rates from the Laffey Matrix.

When a case, such as this one, has been litigated for an extended period, "it is at the Court's discretion whether to apply the current year's rates." *Mitchell v. City of Cincinnati*, Case No. 1:21-CV-626, 2024 WL 5041020, at *3 (S.D. Ohio Dec. 9, 2024) (citing *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005)). The Court may choose to use historic rates "so as to avoid a windfall or prevent the payment of fees at rates that were not in effect when much of the work was done." *Id*. (citing *Gonter v. Hunt Value Co*., 510 F.3d 610, 617 (6th Cir. 2007)).

Here, the Court concludes that the historic rates from the Laffey Matrix are appropriate and constitute a reasonable hourly rate in this case. The Court has reviewed all of the individual timekeepers' records provided by Plaintiffs and calculated the Laffey Matrix rate for the individual timekeepers at the yearly rate for when the services were performed.

### Reasonable Number of Hours

In determining whether the number of hours expended on a case is reasonable, "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598 (2001)). The relevant inquiry is not whether "in hindsight the time expenditure was strictly necessary to obtain the relief achieved." *Id*. However, "[t]he documentation offered in support of the hours charged must be of sufficient detail to enable a court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of such litigation." *Imwalle*, 515 F.3d at 553 (quoting *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.,* 732 F.2d 495, 502, n. 2 (6th Cir. 1984)). Additionally, counsel is expected to exercise billing judgment by excluding "hours that were not 'reasonably expended.'" *Hensley,* 461 U.S. at 434.

Plaintiffs are not seeking fees related to work which only supported their breach of contract claim. However, in reviewing the hours expended, the Court did find some time which was strictly attributable to the breach of contract claim. For example, the Court

8

reviewed the reports and testimony of certain expert witnesses: Patricia Oliver, Michael Simkovic and Charles Grice. (Docs. 188-1, 188-4, 188-5). These witnesses opined upon the statutory non-compliance of the TILA language which formed the basis for the TILA violation and the breach of contract claim. Therefore, their testimony was relevant to both claims. On the other hand, Arthur Olsen opined as to the damages calculation for the breach of contract claim. (Doc. 194-2, PAGEID 4935). His testimony can therefore only be applicable to the breach of contract claim. Accordingly, the Court has excluded any attorney time entries associated with this expert witness.

Defendant complains that Plaintiffs have claimed 578 hours based on vague descriptions of work, such as "Discovery," "document review – 4.5 hours," or "Status with B.B. and R.P." (Doc. 304, PAGEID 10832). However, as this Court has explained:

> Billing entries do not need to be "explicitly detailed." *McCombs v. Meijer, Inc.*, 395 F.3d 346, 360 (6th Cir. 2005). Moreover, billing entries should not be considered in a vacuum. *See*, *e.g.*, *U.S. ex rel. Lefan v. Gen. Elec. Co.*, 397 F. App'x 144, 149 (6th Cir. 2010) (holding that billing entries for "Email," "Telephone Conference w/REL," and "Travel to Owensboro" were sufficiently detailed to support an attorneys' fees award, where the court could determine, through "context," the nature of the "work performed").

*United States ex rel. Trakhter v. Provider Servs., Inc.*, No. 1:11-CV-217, 2019 WL 2422422, at *6 (S.D. Ohio June 10, 2019). The Court finds that the entries in the records provided to the Court are sufficiently descriptive for the Court to determine whether or not the hours were reasonably expended.

The Court has reviewed all the timekeeper records submitted; and taking the above observations into consideration makes the following determination regarding the reasonable number of hours expended at a reasonable hourly rate (*i.e.*, the lodestar):

9

# **FEE CHART**

## **Tyco & Zavareei LLP**

| TIMEKEEPER | REQUEST | DETERMINATION |
|---|---|---|
| Hassan Zavareei | $ 887,985.70 | $ 650,712. 20 |
| Anna Haac | $ 853,064.80 | $ 473,670.00 + $ 174,007.00 [4] |
| Jeffrey Kaliel | $ 313,709.40 | $ 135,660.75 |
| Shana Khader | $ 117,739.80 | $ 88,464.10 |
| David Lawler | $ 87,345.00 | $ 72,684.93 |
| Dia Rasinariu | $ 163,247.70 | $ 105,476.80 |
| Cort Carlson | $ 61,354.80 | $ 29,405.00 |
| Aaron McReynolds | $ 39,889.10 | $ 38,192.20 |
| Amy Berkowitz | $ 2294.40 | $ 979.90 |
| Connor Rowe | $ 71.70 | $ 0 |
| Dana Gillis | $ 501.90 | $ 0 |
| Emma Bass | $382.40 | $ 0 |
| Emma Schlip | $ 191.20 | $ 0 |
| Genna Wolinsky | $ 5353.60 | $ 0 |
| James Morrison | $ 621.40 | $ 0 |
| Karen Ressue | $ 573.60 | $ 0 |
| Matthew Folkerts | $ 7193.90 | $ 5988.40 |
| Maura Dunn | $ 3991.00 | $ 3631.20 |

---

[4]The Court has included attorney time spent preparing Plaintiffs' request for attorney fees because "[t]he cases from this and other circuits uniformly hold that a lawyer should receive a fee for preparing and successfully litigating the attorney fee case after the original case is over."  *Coulter v. State of Tenn.*, 805 F.2d 146, 151 (6th Cir. 1986), *abrogated on other grounds by, The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016)).

| | | |
|---|---|---|
| Mia Goschalk | $ 5186.30 | $ 3023.60 |
| Nathan Laporte | $ 2987.50 | $ 2428.50 |
| Nicole Parzenheim | $ 3632.80 | $ 3093.10 |
| Sydney Teng | $ 3178.70 | $ 2404.40 |
| Allegra Lubar | $ 2294.40 | $ 0 |
| Stephanie Ricker | $ 95.60 | $ 0 |
| **TOTAL:** | **$ 2,562,886.70** | **$ 1,789,822.08** |

## Spangenberg, Shibley, & Liber LLP

| TIMEKEEPER | REQUEST | DETERMINATION |
|---|---|---|
| Daniel French | $ 158,303.40 | $ 110,813.10 |
| Dennis Lawndowne | $ 138,054.77 | $ 79,508.75 |
| Jeradon Mura | $ 4266.34 | No Time Entries |
| Jeremy Tor | $ 1176.52 | No Time Entries |
| Kevin Hullick | $ 206,798.55 | $ 141,994.62 |
| Stuart Scott | $ 787,348.73 | $ 592,984.74 |
| Hudson Curtin | $ 5191.08 | $ 5257.12 |
| Kyra Wieber | $ 286.80 | $ 0 |
| Samantha Oetting | $ 564.04 | $ 0 |
| **TOTAL:** | **$ 1,301,990.23** | **$ 930,558.13** |

## Wagner, Vaughan & McLaughlin, P.A.

| TIMEKEEPER | REQUEST | DETERMINATION |
|---|---|---|
| Jason Whittemore | $ 856,840.20 | $ 587,750.54 |
| Alan Wagner | $ 56,866.60 | $ 40,393.40 |

| | | |
|---|---|---|
| Kevin McLaughlin | $ 96,187.00 | $ 64,023.90 |
| Michael McLaughlin | $ 114,473.10 | $ 83,053.30 |
| Arelys McQuade Vicky Knudsen | $ 18,904.90 | $15,503.60 |
| **TOTAL:** | **$ 1,143,271.80** | **$ 790,724.74** |

## Barnow and Associates, P.C.

| TIMEKEEPER | REQUEST | DETERMINATION |
|---|---|---|
| Ben Barnow | $ 102,690.00 | $ 53,513.98 |
| Anthony Parkhill | $ 725.00 | $ 550.00 |
| Erich Schork | $ 73,805.00 | $ 42,746.00 |
| Sharon Harris | $ 52,967.50 | $ 34,300.00 |
| Blake Strautins | $ 29,240.00 | $ 19,584.00 |
| Riley Prince | $ 240.00 | $ 0 |
| **TOTAL:** | **$ 259,667.50** | **$ 150,693.98** |

## Carey, Danis, and Lowe

| TIMEKEEPER | REQUEST | DETERMINATION |
|---|---|---|
| Francis J. "Casey" Flynn, Jr. | $ 122,431.60 | $ 83,404.90 |
| Tiffany Yiatras | $ 116,723.20 | $ 79,449.30 |
| **TOTAL:** | **$ 239,154.80** | **$ 162,854.20** |

## Jones Ward PLC

| TIMEKEEPER | REQUEST | DETERMINATION |
|---|---|---|
| Jasper D. Ward, IV | $ 74,366.60 | $ 40,836.00 |
| Alex C. Davis | $ 57,684.60 | $ 37,015.50 |

| TOTAL: | $ 132,051.20 | $ 77851.50 |

| OVERALL TOTAL: | $ 5,639,022.23 | $ 3,902,504.23 |

## Degree of Success

Defendant argues that Plaintiffs' lack of success warrants a reduction in the lodestar amount. Defendant explains that Plaintiffs' main focus throughout the litigation was on the breach of contract action, not the TILA claim. While this may be true from a potential recovery posture, you must have one to hit the other. Both the breach of contract claim and the TILA claim are premised upon the Annual Percentage Rate ("APR") disclosure. The Early Access loan agreement stated that the APR was 120%, but because most Early Access customers paid off the loan in less than thirty days, these customers paid more than the 120% APR disclosed in the contract. The Court found that this disclosure did not comply with TILA's disclosure requirements (Doc. 209, PAGEID 6058); but the case moved forward on Plaintiffs' breach of contract claim. At trial, Plaintiffs argued that Defendant breached the APR term when it charged Plaintiff more than 120% APR. The jury agreed and found that Defendant breached the Early Access loan agreement; but ultimately found in Defendant's favor because the voluntary payment doctrine applied. (Doc. 272-1, PAGEID 8644).

Moreover, when this case was on appeal, Defendant argued that this Court improperly certified the dismissed breach of contract claim as a final judgment under Federal Rule of Civil Procedure 54(b) because the breach of contract and TILA counts represent a single "claim." *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d

13

265, 273 (6th Cir. 2019). The Sixth Circuit observed that the TILA and breach of contract counts stemmed from different acts or omissions by Defendant; and each count sought to recover damages that stem from separate injuries. *Id*. at 274. However, the Sixth Circuit observed:

> To be sure, each count is not entirely divorced from the other. For example, the complaint alleges that Fifth Third "breached the contract by failing to provide an accurate APR summary for Early Access Loans on monthly bank statements." Similarly, the TILA count alleges that Fifth Third "did not provide accurate and meaningful APR disclosures to Plaintiffs regarding Early Access Loans."

925 F.3d at 275. The Sixth Circuit concluded that "despite the presence of some overlap," for purposes of Rule 54(b), the differences between the TILA and breach of contract counts "sufficiently outweigh what they have in common" and permitted the appeal. *Id.*

All of this is to say that even though Plaintiffs set forth different legal theories, there was overlap as to the basis for liability; and at the center of both claims was the APR disclosure in the Early Access loan agreement. While they have taken different procedural paths, the two claims have always been related. As the Sixth Circuit has instructed:

> "[w]hen claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced." *Deja Vu*, 421 F.3d at 423 (internal quotation marks omitted). This is because when several claims arise from a common core of facts, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims." *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933.

*Waldo v. Consumers Energy Co.*, 726 F.3d 802, 823 (6th Cir. 2013). Therefore, the Court declines to make a reduction solely based on the lack of success on the breach of contact claim. Again, as the Sixth Circuit has explained:

14

> a court should not measure a plaintiff's success simply by using a ratio of successful claims to claims raised. *See Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 421 F.3d 417, 423 (6th Cir. 2005). Indeed, "[w]e have 'repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed.'" *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 554 (6th Cir. 2008) (quoting Deja Vu, 421 F.3d at 423).

726 F.3d 802, 822-23 (6th Cir. 2013). In keeping with these directives, the Court will not use any type of ratio of successful claims to the total number of claims raised to reduce the amount of fees. The Court notes that Plaintiffs have already applied a 15% reduction in the total time spent to account for time attributable solely to the breach of contract claim, and a further reduction is not in order.

Defendant would also have the Court look at the amount of fees spent relative to the total recovery. Defendant points out that the fees outweigh the two million dollars in statutory damages on the TILA claim. While this is true, attorney's fees are not limited by the amount of the plaintiff's recovery. *Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 802 (6th Cir. 1996) (citing *In re Pine*, 705 F.2d 936, 938 (7th Cir.1983) and *McGowan v. King, Inc.*, 661 F.2d 48 (5th Cir.1981)); *see also Daenzer v. Wayland Ford, Inc.*, 210 F.R.D. 202, 204 (W.D. Mich. 2002) (awarding costs and reasonable attorney's fees where the plaintiff won summary judgment on the TILA claim but was denied statutory damages due to the financial situation of the defendant). The Court notes that this case was litigated for a long period of time which led to an accumulation of fees.

Finally, Defendant argues that Plaintiffs are not entitled to any fees which accumulated after Plaintiffs rejected a settlement offer in October of 2016. Defendant says that this work did not contribute to Plaintiffs' success because the settlement would have resulted in a larger class award.

15

To be clear, the settlement offer was not made as an offer of judgment pursuant to Federal Rule of Civil Procedure 68. Therefore, "the normal rules for awarding fees apply, including the discretionary authority of the district court to award fees and to consider a wide range of factors in doing so." *McKelvey v. Sec'y of U.S. Army*, 768 F.3d 491, 496–97 (6th Cir. 2014); *see also Kritcher v. Prudential Sec., Inc.*, 799 F. App'x 376, 379 (6th Cir. 2020) (explaining that "a district court may consider substantial settlement offers that are rejected in calculating fee awards as part of the 'degree of success' in the litigation."). Under this analysis, the Court rejects the notion that Plaintiffs' failure to accept the settlement offer in October of 2016 is a basis for reducing the loadstar amount. There is nothing in the history of this case indicating that Plaintiffs unnecessarily prolonged the litigation by rejecting the settlement offer in October of 2016. At that point in time both the TILA claim and the breach of contract claim were still very much in dispute; and the bulk of the work necessary to pursue both claims took place after settlement discussions stalled. Moreover, the Sixth Circuit has observed:

> Hindsight has a way of making things look clearer at the point of decision—the time of declining to settle a case—than they may have been. Just because a plaintiff ends up with less than what was offered during settlement negotiations does not mean fees should be reduced.

*McKelvey,* 768 F.3d at 495. Therefore, the Court concludes Plaintiffs' decision to reject Defendant's settlement offer in October of 2016 does not warrant a reduction in fees in this case.

### **Duplication of Services**

Defendant argues that there should be a reduction for excessive lawyering and duplication of effort. (Doc. 304, PAGEID 10831-33). Defendant points out that multiple

16

lawyers from multiple Plaintiffs' firms billed for the same work and also billed more than 2,179 hours for internal conferencing time. (Doc. 304, PAGEID 10832).

As one district court has observed:

> when assessing whether counsel has exercised billing judgment, district courts need not act as "green-eyeshade accountants" who attempt to "achieve auditing perfection." *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir. 2016) (quoting *Fox*, 563 U.S. at 838). Neither Supreme Court nor Sixth Circuit precedent require courts "to cull through the records and conduct a[ ] line-item review." *Id*. at 713 n.11. Rather, district courts "must simply ... do 'rough justice.' " *Id*. at 703. (quoting Fox, 563 U.S. at 838). "This means that the court can rely on estimates based on its 'overall sense of a suit.'" *Id*. (quoting Fox, 563 U.S. at 838).

*Pianko v. Gen. R.V. Ctr., Inc*., Case No. 20-CV-13371, 2025 WL 546935, at *4 (E.D. Mich. Feb. 19, 2025). Accordingly, the Court may employ an across-the-board reduction, as opposed to line-by-line reductions. *Id*. (citing *Auto All. Int'l, Inc. v. U.S. Customs Serv*., 155 F. App'x 226, 228 (2005)). This method is particularly appropriate in a case like this one where fee documentation is voluminous. *See id.* (citing *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) ("Where fee documentation is voluminous ... an hour-by-hour review is simply impractical and a waste of judicial resources.")).

The Court notes that when a number of cases are consolidated for class action purposes, it is not the least bit unusual for various law firms to be involved in the prosecution of the matter and to divide the workload. In reviewing the timesheets there was a clear division of assignment of various aspects of the case from motion practice, expert preparation, and discovery requests to review of other counsel's work. There was also, by implication and borne out by the timekeeper's records, a number of entries that were duplicative services performed by various timekeepers as well as multiple attorney review of updates from other timekeepers. The time recorded demonstrated much

substantive work but also entries that only include descriptions such as "review" and "respond to" (usually .1 or .2 entries). Frankly, it is difficult to determine if a short "review" entry resulted in more substantive action on the part of the recipient or was merely a file notation. Therefore, the Court will utilize a percentage reduction over all timekeepers. Having reviewed all the time entries, the Court determines that a 15% reduction to the above calculation is appropriate, which equals a total of $3,317,128.60 in fees.

## Costs and expenses

"The award of statutory costs is a matter for the district court, in its best judgment as to what was reasonable and necessary, and the appellate courts will not normally interfere with the exercise of that discretion." *Waldo*, 726 F.3d at 827 (citing *Sigley v. Kuhn*, 2000 WL 145187, at *8 (6th Cir. 2000)) (analyzing a request for attorney's fees and costs pursuant to 42 U.S.C. § 1988).

The Court has reviewed the cost and expense reports submitted by Plaintiffs' counsel. The entries typically involve charges for Westlaw, Pacer, transcripts, travel and photocopies. Unlike the timekeeper records provided for counsel and staff, the Court is unable to discern expenses which could arguably be solely for the breach of contract claim. Therefore, the Court will apply the same 15% percent reduction used above.

## Class Representatives

Plaintiffs have requested that the five class representatives receive incentive/service awards of $10,000 each. Plaintiffs explain that the class representatives have participated in numerous meetings with their attorneys, reviewed discovery requests and responses, and had their depositions taken. Defendant does not argue that the class representatives did not adequately represent the class. Instead, Defendant takes the

position that any incentive award must be paid from the judgment. Plaintiffs do not disagree. (Doc. 311, PAGEID 121181).

The Court finds Plaintiffs' request for incentive awards well-taken. The named Plaintiffs are entitled to an incentive award in the amount of $10,000 each, but these amounts will be paid from the statutory damages award.

## Costs of Notice and Distribution

Defendant argues that the costs of notice and distribution should be paid out of the statutory damages award. While the class must initially bear the cost of notice to the class, interim litigation costs may be shifted to the defendant after a plaintiff's showing of some success on the merits. *Hook v. Baker*, No. C2-02-CV-901, 2004 WL 3113717, at *3 (S.D. Ohio Sept. 1, 2004) ("Simply stated, because the Court has already certified the class and determined that defendant is liable to plaintiffs for violating the TILA and ORISA, the cost of the notice should be borne by defendant."). Here, the class has been certified, Defendant has been found liable for violating TILA and statutory damages were awarded. Moreover, Defendant maintains the customer databases containing Plaintiffs' individual information. Therefore, Defendant will be responsible for the costs of notice to the class and disbursement of payments.

19

## Conclusion

Therefore, it is **ORDERED** that Defendant pay $3,317,128.60 in fees and $268,236.33 in costs. Defendant is also responsible for the cost of class notice and distribution. Each named Plaintiff shall be paid $10,000 each ($50,000 total) from the statutory damages award.

**IT IS SO ORDERED.**

                                              */s/ Michael R. Barrett*
                                              Michael R. Barrett
                                              United States District Judge